### HARRY W. BELK v. O. DOUGLAS BOYCE.

(Filed 25 November, 1964.)

**1. Appeal and Error § 42—**

An instruction to the effect that defendant would be negligent if at the time and place defendant shot his pistol he knew or had reasonable ground to know that plaintiff was on the premises will not be held for error as confining the rule to the presence of plaintiff himself when in context the instruction charges that defendant's conduct should be judged in the light of the presence of any human being at the scene.

**2. Animals § 7—**

It is illegal for the owner of premises to attempt to kill a dog thereon when there is no evidence that the dog was a mad dog, was molesting or killing any domestic animals or fowl, was damaging property, or had ever done so. G.S. 14-360, G.S. 67-3, G.S. 67-14.

**3. Weapons and Firearms § 2—**

The rule that a person violating the law in shooting a weapon is civilly liable for injuries resulting to another person, irrespective of negligence, applies when the shooting of the weapon is in violation of an ordinance or statute for the safety of persons, and therefore the fact that a person firing a pistol was illegally attempting to kill a dog does not render him absolutely liable for injury to another, since the statutes relating to the killing of domestic animals were not enacted for the protection or safety of persons.

**4. Negligence § 28—**

Ordinarily, it is error for the court to instruct the jury that defendant's negligence must be the proximate cause of the injury in order to impose liability, but such instruction is not prejudicial when there is no evidence of concurring negligence or other responsible cause, and only the defendant's negligence is at issue.

**5. Negligence § 4—**

The rule that persons having possession and control over dangerous instrumentalities are under duty to use a high degree of care commensurate with the dangerous character of the article to prevent injury to others applies to firearms, and the instruction in this case *is held* in substantial accord therewith.

**6. Same; Negligence § 38—**

The owner of premises who injures a licensee as a result of the owner's attempt to shoot a dog on the premises is not liable to the licensee in the absence of negligence, even though his act in attempting to kill the dog is illegal, and if the owner did not know, or in the exercise of reasonable care should not have known, of the presence of the licensee in the vicinity, his act in firing the pistol on his own premises would not be a breach of duty toward the licensee.

**7. Evidence § 15—**

 In an action to recover for injuries resulting to a boy injured by a shot fired by defendant at a dog on defendant's premises, testimony of a witness that he had been shot at by some "unknown person" on two occasions while at a pond on the premises, is not admissible for the purpose of fixing defendant with knowledge that boys frequented the pond, and further its exclusion is not prejudicial when defendant himself testifies that he knew boys had been coming to the pond.

APPEAL by plaintiff from *Clarkson, J.,* May 1964 Civil Session of GASTON.

Action to recover damages for personal injuries, including loss of an eye, resulting from a bullet wound.

Plaintiff alleges that he was injured by reason of defendant's negligence in firing a pistol several times in his direction while he (plaintiff) was fishing in a pond on defendant's land; that defendant's negligence consisted in (1) firing the pistol without first ascertaining that he could do so without injury to another, (2) shooting at or near plaintiff when he saw or in the exercise of due care could have seen him, (3) firing the pistol in a wilful, wanton and dangerous manner without due regard to the presence or probable presence of persons in the line of fire, and (4) shooting at and hitting plaintiff.

Defendant owned a 130-acre farm in Gaston County. Defendant did not reside on the farm but his employee or caretaker lived in a house thereon. The farm was used, among other things, for pasturing sheep, and was enclosed by a wire fence with strands of barbed wire at the top and bottom. On the farm was a 6-acre pond surrounded by a meadow.

Plaintiff's evidence is summarized as follows: About 4:00 P.M., 27 April 1955, plaintiff, then 16 years old, went to defendant's pond to fish. His dog followed him there. After he had been fishing about 30 minutes, he saw two men, one of whom was defendant, coming toward him across the field; plaintiff started walking toward them, thinking they saw him — there was nothing to obstruct the view. Plaintiff was clad in a white T-shirt and blue jeans. Defendant raised a pistol and fired toward plaintiff; the distance separating them was 150 to 175 feet. At that time plaintiff's dog was between him and defendant. When defendant fired, plaintiff turned and hurried in the opposite direction to the edge of the woods — 40 feet from the north end of the pond — and lay down in some low bushes to avoid being hit. As plaintiff fled toward the edge of the woods two bullets kicked up dust beside him. Defendant continued firing and while plaintiff was lying in the bushes a bullet struck him in the vicinity of his left eye; he started screaming.

Defendant and the caretaker came to plaintiff, picked him up and carried him to a hospital. As a result of the bullet wound plaintiff lost his left eye, experienced much pain and suffering and incurred large medical expenses. In going to defendant's farm on the day of the accident, plaintiff followed a path through the woods, the nearest way. The fence was "about tromped down" where the path crossed it. There were not any "No Trespassing" signs. He had been to the pond many times before, both alone and with other boys; he had never been told to leave or stay off. He had never asked permission. He didn't know whose land the pond was on. There was testimony that at least 18 boys (8 of whom testified) went to the pond frequently prior to the accident in question, to fish, hunt snakes and frogs and swim. The farm was not posted and they had never been ordered away.

Defendant's evidence tends to show: On the afternoon in question defendant and his caretaker were on the farm repairing an electric fence. They were south of the pond about 100 yards from the head or north end of the pond. Defendant had his .22 caliber target pistol; he carried it with him when he went to the farm to shoot snakes which were plentiful in and around the pond. Furthermore, dogs had been killing his sheep. He spied a dog near the edge of the woods on the west side of the pond, about 125 feet from the head of the pond. The dog was trotting eastwardly toward the head of the pond. Defendant began shooting at the dog; he shot nine times. The last time he fired the dog was in the bulrushes at the head of the pond. About 30 seconds after he fired the last shot he heard someone moaning and saw a boy's back rise out of the bulrushes at the head of the pond. He and his caretaker ran to plaintiff and took him to a hospital as quickly as they could. He did not see plaintiff at any time until after the shooting. "No Trespassing" signs were posted all around the farm on every fifth or sixth fence post. There was a "No Fishing" sign on a tree about 30 feet from the head of the pond. Defendant had never given anyone permission to fish in the pond. He knew boys had been coming on his property and to the pond — this is the reason he put up the "No Trespassing" signs. The caretaker had been instructed to keep the boys away, and whenever he had seen them at the pond he yelled to them and told them to get off the property. A deputy sheriff went with plaintiff to the pond about two weeks after the accident. Plaintiff told the deputy that on the day of the accident he went to the pond to fish, his dog ran out barking at someone approaching and he hid. He showed the deputy where he hid at the head of the pond, and told the deputy that someone started shooting while he was hidden and he was hit.

Issues were submitted to and answered by the jury as follows:

"1.  Was the plaintiff injured by the negligence of the defendant, as alleged in the Complaint?

"ANSWER:  No.

"2.  What compensatory damages, if any, is the plaintiff entitled to recover of the defendant?

"ANSWER:  ................

"3.  Was the plaintiff injured by the wilful and wanton conduct of the defendant as alleged in the complaint?

"ANSWER:  ................

"4.  What punitive damages, if any, is the plaintiff entitled to recover of the defendant?

"ANSWER:  ................"

Judgment was entered dismissing the action, and plaintiff appeals.

*Daniel J. Walton for plaintiff.*
*Hollowell & Stott for defendant.*

MOORE, J.  Appellant's main attack is upon certain portions of the charge. Attention is particularly focused on the judge's final instruction on the first issue, as follows:

> ". . . if the plaintiff . . . has satisfied the jury from the evidence and by its greater weight that the defendant . . . at the time and place in question shot the plaintiff and that at the time the defendant knew or had reasonable grounds to know that plaintiff was on defendant's premises . . . that would constitute negligence on the part of the defendant, and if the plaintiff has further satisfied you from the evidence and by its greater weight that such negligence on the part of the defendant was the proximate cause of plaintiff's injuries, then you would answer the first issue Yes."

Plaintiff contends that this instruction is erroneous in three respects.

(1)  He says it "imposed an undue burden on him to prove that defendant knew or had reasonable grounds to believe that the *plaintiff, himself,* was on defendant's premises." It certainly is not essential that the negligent person should have anticipated injury to the particular person who was in fact injured, or the particular kind of injury produced. *Drum v. Miller,* 135 N.C. 204, 47 S.E. 421; *Lancaster v. Greyhound Corp.,* 219 N.C. 679, 14 S.E. 2d 820. When the above in-

struction is read in context with the preceding portions of the charge it is clear that the court did not intend and the jury did not understand that the strained construction now urged by appellant should be given the language used. The objection is not sustained.

(2)   Plaintiff contends that defendant's liability in this case does not depend upon his knowledge of the presence of plaintiff, actual or imputed. This requires a more extended discussion.

As a general rule, "If a person is violating the law by . . . shooting a weapon, he is civilly liable for any injury, even an accidental injury, inflicted by him with such weapon, the question of negligence being immaterial. . . . The fact that defendant's motive in discharging the weapon is laudable is immaterial where his act is illegal." 94 C.J.S., Weapons, § 28, pp. 527, 528.

Defendant's act in attempting to kill the dog, in the instant case, was unquestionably illegal. G.S. 14-360. The dog was not molesting or killing sheep or any other domestic animal or fowl and was not damaging property. There is no evidence he had ever done so. See G.S. 67-3; G.S. 67-14. There is no evidence that any sheep were in the vicinity. He was not a mad dog. G.S. 67-14.

The case of *Corn v. Sheppard*, 229 N.W. 869 (Minn. 1930), is in point. Defendant gave permission for boy scouts to camp on his farm at any time. On the night in question two scouts set up camp some distance from the house. During the night they went to the house to get water. Dogs had been molesting defendant's hogs. Defendant saw some dogs on the premises, got his pistol and went outside. He fired at a running dog and struck and injured one of the boys. He did not know the boys were on the premises until after the injury had been inflicted. The Court said:

"Dogs are personal property. . . . It is unlawful to kill them except when necessary to save persons, domestic animals, or poultry from injury. . . . There is no claim that the dog in question was menacing anyone, or any animal or had ever done so. The attempt to shoot him was unlawful."

"Where a person intentionally discharges a firearm for a wrongful purpose and another is hit, he is liable for the injuries inflicted, although he did not intend to hit the other nor even know any person was within range."

The court held that defendant was clearly liable for the injuries to the boy, and approved a peremptory instruction to that effect.

The courts have applied this rule where persons were unintentionally injured from the discharging of firearms within the limits of towns and cities in violation of municipal ordinances. *Townsend v. McCollum,* 175 N.C. 698, 95 S.E. 364; *Farrow v. Hoffecker,* 79 A. 920 (Del. 1906). Also in other situations: *Sitton v. Twiggs,* 213 N.C. 261, 195 S.E. 801; *Gross v. Goodman,* 19 N.Y.S. 2d 732 (1940); *Wright v. Clark,* 50 Vt. 130 (1862).

But the courts are now inclined to modify the rule and enlarge the scope of exceptions to this rule of absolute liability. ". . . clearly, the modern tendency of the court is to apply the general rule of negligence where injury or death has been inflicted by missiles from a firearm, and to permit the defendant in an action for damages to show in defense his freedom from negligence in causing the injury complained of." 56 Am. Jur., Weapons and Firearms, § 22, p. 1005.

*Moore v. Fletcher,* 363 P. 2d 1056 (Colo. 1961), is a case in point. Defendant had a goose pit on his farm from which he shot wild geese which came to eat grain in his field. During the night plaintiffs, without the knowledge or permission of defendant, came on the farm and dug a goose pit about 225 yards from defendant's pit, put out decoys and waited for dawn and the arrival of geese. In the meanwhile defendant went to his pit. About daybreak he saw the decoys, thought they were geese, and in shooting at them struck and injured plaintiffs. Defendant was shooting a .22 rifle. It was unlawful to shoot wild geese with such firearm. Because of the unlawful use of the firearm plaintiffs insisted that defendant was liable. The court discussed the matter in these terms:

"Trespassers and mere licensees take the premises as they find them. The owner of the premises is not under the same obligation to trespassers and licensees as he is to those who are upon the premises by his express or implied invitation. . . . To the former (trespassers and mere licensees) . . . he is under obligation not wilfully and intentionally to injure them, or, as it is sometimes expressed, not to injure them after becoming aware of their presence. Of course, he must exercise reasonable care *after becoming aware of their presence, not to injure them by the affirmative act or force set in motion.*" (Quoted by the court from *Gotch v. K. & B. Packing and Provision Company,* 93 Colo. 276, 25 P. 2d 719, 720, 89 A.L.R. 573.)

"It is plaintiff's contention that inasmuch as defendant was hunting migratory waterfowl with a rifle he was negligent, *per se.* A most casual reading of C.R.S. '53, 62-12-3 clearly indicates that

the purpose and intent of this particular statute is to protect migratory waterfowl and not those who seek to kill them. Accordingly, violation of this particular statute does not of itself establish negligence nor responsibility on Fletcher (defendant)."

By the same reasoning, it is our opinion that the fact defendant was unlawfully shooting at a dog does not render the act negligence *per se,* nor impose on defendant absolute liability. Plaintiff was at best a mere licensee. The "Cruelty to Animals" statute (G.S. 14-360) is for the protection of animals, not for the protection of trespassers or mere licensees. Since the statute is not for the protection of the class to which plaintiff belongs, its violation does not impose liability in the absence of a showing that defendant knew, or in the exercise of reasonable care should have known, of plaintiff's presence in the vicinity.

If, as plaintiff contends in another connection, defendant saw him and was shooting at him, he would be liable. Such conduct would not only be negligence *per se,* but would be gross and wilful negligence. The charge of the court is clear and direct on this point.

(3) Plaintiff contends the judge erred in the instruction set out first above in that he used the expression *"the* proximate cause." It is true that there may be more than one proximate cause of an injury, and it is not ordinarily required that the negligence of the defendant be the sole proximate cause of the injury in order to fix liability upon defendant. In some circumstances it is prejudicial error for the court to charge that plaintiff must show that defendant's conduct was *the* proximate cause of the injury and damage. *Price v. Gray,* 246 N.C. 162, 97 S.E. 2d 844. But where there is no evidence of concurring negligence or other responsible cause, and only the defendant's negligence is at issue, it is not error for the court to use the expression "the proximate cause." In the instant case only the alleged negligence of defendant is involved. The objection is not sustained.

Appellant complains that the charge fails to inform the jury as to the degree of care required in the use of firearms. The court's instructions on this point were as follows:

"He (plaintiff) says and contends that Dr. Boyce (defendant) was negligent in shooting at him, shooting 9 times, . . . and he says and contends that defendant was using a pistol, a dangerous instrumentality, and that he should have used a very high degree of care in the use of that pistol and that he could have foreseen the injuries would occur in shooting at random like he did." (Here the court was stating contentions of plaintiff on the first issue.)

". . . the court instructs you that a pistol, a .22 pistol, such as the evidence tends to show was used in this case, is a type of firearm, and is a dangerous instrumentality, depending, of course, upon the manner in which it might be used, and that in handling firearms a person is charged with a high degree of care . . . depending on the use of said firearms. . . . the court has given you the rule with reference to the alleged liability of the defendant in instructing you on the first issue, and the fact that a pistol was used in this is something you should take in consideration together with all of the other evidence in the case." (Here the court is giving additional instructions at the oral request of plaintiff.)

"It is often said that a very high degree of care is required from all persons using firearms in the immediate vicinity of others regardless of how lawful or innocent such use may be, or that more than ordinary care to prevent injury to others is required. Some courts refer to the degree of care required as a high degree of care; others say that the utmost or highest degree of care must be used to the end that harm may not come to others. More often, the requisite degree of care is defined as such care as is commensurate with the dangerous nature of the firearm." 56 Am. Jur., Weapons and Firearms, § 28, p. 1006. Persons having possession and control over dangerous instrumentalities are under duty to use a high degree of care commensurate with the dangerous character of the article to prevent injury to others. This rule applies to firearms. 3 Strong: N. C. Index, Negligence, § 4, pp. 445, 446; *Rea v. Simowitz*, 225 N.C. 575, 35 S.E. 2d 871; *Luttrell v. Mineral Co.*, 220 N.C. 782, 18 S.E. 2d 412; *Fox v. Army Store*, 215 N.C. 187, 1 S.E. 2d 550; *Sitton v. Twiggs, supra.*

The court's instructions are in substantial accord with the law as declared in the former opinions of this Court.

Finally, plaintiff contends that the court erred in excluding the testimony of plaintiff's witness, Verlon Gibson, that he had on two prior occasions been shot at by some person unknown to him while he was at defendant's pond. Plaintiff insists that the evidence was admissible to fix defendant with knowledge that boys were frequenting the pond. This position is not tenable. The witness does not know who did the shooting or that defendant even knew that it took place. Furthermore, defendant testified he knew boys had been coming to the pond and that was the reason he put up "No Trespassing" signs.

No error