SARAH H. DAVIS, ADMINISTRATRIX OF THE ESTATE OF JENNINGS B. REAVES,
JR. v. SILOO INCORPORATED, GENUINE PARTS COMPANY, NATION-
AL AUTOMOBILE PARTS ASSOCIATION AND HENDERSONVILLE
SERVICE PARTS, INC.

No. 7929SC898

(Filed 17 June 1980)

1. Negligence § 5; Sales § 22– chemical which can. cause serious injury upon skin
   contact – dangerous instrumentality – liability of manufacturer under negli-
   gence theory

   A chemical which, when it comes in contact with the skin of a human
   being not subject to rare allergenic responses, can cause serious bodily
   injury, illness or death to a human being is a dangerous instrumentality or
   substance, and the manufacturer of the dangerous substance will be subject

Davis v. Siloo Inc.

to liability under a negligence theory for damages which proximately result from the failure to provide adequate warnings as to the product's dangerous propensities which are known or which by exercise of care commensurate with the danger should be known by the manufacturer, or from the failure to provide adequate directions for the foreseeable user as to how the dangerous product should or should not be used with respect to foreseeable uses.

2. **Sales § 8– implied warranty – contractual privity**

Plaintiff's claim for breach of implied warranty of a carburetor and metal cleaner manufactured by defendant was barred by the lack of contractual privity between the plaintiff and defendant manufacturer.

3. **Sales § 5.1– label on product – insufficiency to establish express warranty**

The label on a can of Petisol 202, a carburetor and metal cleaner manufactured by defendant, was insufficient to create an express warranty that the product would not be harmful when exposed to the skin on the user's arms.

4. **Negligence § 5.2; Sales § 22.1– death from chemical product – no liability by distributors**

Plaintiff stated no claim for relief against defendant distributors for negligence in the death of plaintiff's intestate allegedly caused by a product distributed by defendant where plaintiff alleged that the product was manufactured and packaged by another, and plaintiff alleged no facts to show any exception to the general rule that the seller of a product manufactured by another who does not know or have reason to know that the product is or is likely to be dangerously defective has no duty to test or inspect it, especially where the product is sold in its original package as it came from the manufacturer and the seller acts as a mere marketing conduit between producer and consumer.

5. **Sales § 5.1; Uniform Commercial Code § 10– warranty not created through advertising**

Defendant NAPA did not through its advertising create either an express or implied warranty that Petisol 202 was safe for human use where the Petisol 202 in question was merely sold by a retailer who also sells NAPA approved products, and Petisol 202 was not a NAPA line and did not bear the NAPA trade name or mark.

6. **Uniform Commercial Code § 12– implied warranties – employees or purchasers**

G.S. 25-2-318 does not contemplate extending implied warranties to employees of purchasers.

On writ of certiorari to review proceedings before *Ferrell, Judge.* Judgment entered 16 June 1979 in Superior Court, HENDERSON County. Heard in the Court of Appeals 21 March 1980.

The plaintiff brings suit for wrongful death as administrat-

rix of the Estate of Jennings B. Reaves, Jr. The plaintiff alleges that the decedent was killed by aplastic anemia resulting from the decedent's exposure to Petisol 202 while working at General Heating and Electric Contracting Company on 10 September 1976 in Hendersonville, North Carolina. On that date the decedent was using Petisol 202 as a solvent or bath in a spray gun to keep the spray gun from becoming clogged with hardened glue when the decedent was accidentally sprayed with Petisol 202 on his face, chest, arms and legs. The decedent immediately removed the clothing and washed the areas of skin which had come in contact with the product. The plaintiff further alleges that decedent followed all of the procedures set forth on the label of the container of Petisol 202, which provides as follows:

"PETISOL 202 CARBURETOR & METAL CLEANER is an emulsion-type single-phase, non-caustic, cold-immersion cleaner for the removal of sludge, gums, grease, varnish, carbon and similar residues from carburetors and all metal parts."

"Fast-acting; simple-to-rinse; 'built-in' reserve; long lasting."

"Danger: Harmful or fatal if swallowed, vapor harmful"

"Caution — Combustible mixture"

"Caution: Contains orthodichlorobenzene and xylol. Avoid prolonged breathing of vapor. Use in well-ventilated area. If swallowed, do not induce vomiting. Keep patient warm and quiet in a well ventilated area. Call a physician immediately. Avoid prolonged contact with skin. While Petisol 202 permits the immersion of hands, some dryness of skin may be noticed after prolonged exposure to the cleaner. If sensitive to dryness, simply wash hands in water after use and rub on an oily substance such as lanolin or even ordinary motor oil. If Petisol 202 should be splashed in eyes, simply bathe them with plain cold water."

"Keep away from children."

The plaintiff alleged that the Petisol 202 was purchased by General from defendant Hendersonville Service Parts, Inc. ("Service Parts"). Service Parts in turn purchased the Petisol 202 from Genuine Parts Company ("Genuine Parts"), a distributor in Charlotte, North Carolina. National Auto Parts Association ("NAPA") is a purchasing agent for Genuine Parts.

The plaintiff set forth two claims for relief. In the first claim the plaintiff asserted the following acts of negligence on the part of the defendants:

"a. Manufactured, packaged, distributed and sold a product, Petisol 202, knowing or having reason to know that the product was inherently hazardous and deadly in that it might be absorbed through the skin of a person using the product in an ordinary manner and cause the user to contract aplastic anemia;

b. Knew or should have known that the hazardous and deadly nature of the product would not be apparent to a user thereof and nonetheless failed to provide adequate warnings as to the hazards posed by the product and as to the precautions necessary in the course of its use to prevent absorption through the skin of the user;

c. Caused the product to be packaged, distributed and sold in a container which bore a label stating that, except for a risk of dryness of the skin from prolonged contact, Petisol 202 was not dangerous to a user whose skin was exposed to the product, knowing or having reason to know that a user, including plaintiff's intestate, would rely upon that statement and use the product without taking adequate precautions to prevent contact with his skin;

d. With knowledge of the hazardous and deadly nature of the product, placed it in commerce, knowing or having reason to know that it created an unreasonable risk of injury and death to the purchasers of the product or employees of such purchasers, and more particularly plaintiff's intestate;

Davis v. Siloo Inc.

e. Failed to comply with the labeling requirements set forth in 15 USC, § 1261, et seq., which provisions were enacted specifically for the protection of users of hazardous products, including Petisol 202, and more particularly for the protection of plaintiff's intestate, JENNINGS B. REAVES, JR.;

f. Undertook by a campaign of advertising in electronic broadcast media and by printed advertising to induce the general public to rely upon and use products distributed under the NAPA distribution system and by that campaign of advertising induced the public generally and particularly JENNINGS B. REAVES, JR., to rely upon the NAPA retailers to supply products which would be safe and suitable when used for the purposes for which those products were marketed and sold."

In her second claim the plaintiff alleged a breach of the implied warranty of merchantability, a breach of the express warranty which leads one to conclude that the product created no danger of illness or death in contacting the skin of the user other than the danger of dryness of the skin after contact, and a breach of the express warranty resulting from its advertising campaign.

In its answer, defendant Service Parts denied negligence, asserted failure to state a claim, and asserted contributory negligence on the part of the decedent by failing to heed the warnings on the label and by using the Petisol as a spray rather than as an immersion cleaner.

Defendant NAPA filed an answer which denied each allegation and contested the sufficiency of process. Defendant NAPA also moved for summary judgment.

On 6 November 1978 Genuine Parts Company, prior to filing an answer, moved pursuant to N.C. Gen. Stat. 1A-1, Rule 12(b), to dismiss plaintiff's first claim for failure to state a claim for relief by not setting forth that: General Parts had a duty to inspect or test such product; that General Parts had knowledge

that the product was hazardous, or that the danger to plaintiff was foreseeable; and, that General Parts was negligent in its reliance upon the business reputation and standing of Siloo. As to plaintiff's second claim, Genuine Parts argued that Genuine Parts was not in privity of contract with the decedent and that since the product was not sold or manufactured for human consumption, any warranty would not extend to the plaintiff's intestate.

Defendant Siloo Incorporated, in its answer, denied negligence in the manufacture of Petisol 202, denied that the product was the proximate cause of the decedent's death, and asserted acts of negligence on the part of decedent's employer against whom the decedent has recovered under the Workmen's Compensation Act.

On 9 February 1979, Robert McKenna, Director of Operations of NAPA, filed an affidavit in which he stated, *inter alia*, that Petisol 202 is not a NAPA "line," that NAPA does not buy, sell, approve for sale, advertise, or classify Petisol 202 for itself or any other buyer, that Petisol 202 does not bear the NAPA trade name or mark and that NAPA does not purchase or sell goods in its own right but merely approves goods for sale by its member companies. McKenna also denied any activity by NAPA in North Carolina except as follows: parts bearing the NAPA trademark are manufactured by Wix Filter Company in the State; NAPA advertises in the State through a North Carolina advertising agency; NAPA licenses the use of its trade name and mark to Genuine Parts; written material concerning NAPA parts is sent to Genuine Parts Company in Atlanta and distributed by Genuine Parts to its distribution centers in the State; and, NAPA employees, on an infrequent and irregular basis, have visited the Genuine Parts distribution center in the State for the purpose of providing assistance concerning goods approved by NAPA.

On 1 August 1979 the trial court entered a judgment on several prior orders dismissing plaintiff's action against defendants NAPA, Service Parts, Genuine Parts on all claims and dismissing plaintiff's second claim for breach of warranty against defendant Siloo.

*Morris, Golding, Blue and Phillips by William C. Morris, Jr. for plaintiff appellant.*

*Roberts, Cogburn and Williams by Landon Roberts and James W. Williams for defendant appellee Siloo Incorporated.*

*Russell & Greene by William E. Greene for defendant appellee Genuine Parts Company.*

*DuMont, McLean, Leake, Harrell, Talman and Stevenson by Larry Leake for defendant appellee National Automotive Parts Association.*

*Van Winkle, Buck, Wall, Starnes and Davis by Philip J. Smith for defendant appellee Hendersonville Service Parts, Inc.*

CLARK, Judge.

Since the claims asserted by the plaintiff appellant have different applications to each defendant, we elect to consider the potential liability of each defendant separately. We note that the Products Liability Act, Chapter 99B of the North Carolina General Statutes, effective 1 October 1979, is not applicable to this and other actions pending at the effective date.

## I. SILOO INCORPORATED

### A. *Absolute Liability and Negligence (Manufacturer)*

The Appellate Courts of North Carolina have not gone so far as to adopt a general rule of strict liability of manufacturers of products introduced into the stream of commerce. *Fowler v. General Electric Co.*, 40 N.C. App. 301, 252 S.E. 2d 862 (1979). Nor did the General Assembly elect to create such a rule of strict liability when it recently enacted the new Products Liability Act, *supra*. While we may question this State's rejection of strict liability in light of the relative protections afforded those consumers and innocent bystanders in other states who suffer from product-caused injuries, *see generally*, Annot. 53 A.L.R. 2d 239 (1973), (strict liability for failure to warn of dangerous propensities), it is not for this Court at this time to adopt a rule of strict liability.

There are a few exceptions where strict liability has been imposed upon activity associated with a "dangerous instrumentality" and this occurs most often where explosives or blasting operations are involved. *Guilford Realty and Insurance Co. v. Blythe Brothers Co.*, 260 N.C. 69, 131 S.E. 2d 900 (1963) ("absolute" liability used synonymously with "strict" liability); 9 Strong's N.C. Index 3d *Negligence* § 5.1 (1977). In other cases, however, liability associated with dangerous instrumentalities is predicated upon "negligence" instead of strict liability. *See, e.g., Anderson v. Butler,* 284 N.C. 723, 202 S.E. 2d 585 (1974) (forklift entrusted by parent to an immature child becomes inherently dangerous and the parents' independent negligence is a basis for liability). Other cases have noted that even though a negligence standard is applied, the duty of care is nonetheless commensurate with the degree of danger involved and that a highly dangerous substance, product or instrumentality requires the "highest" care or the "utmost" caution. *Moody v. Kersey,* 270 N.C. 614, 155 S.E. 2d 215 (1967), (crane lifting heavy chute); *Belk v. Boyce,* 263 N.C. 24, 138 S.E. 2d 789 (1964), (firearms); *Luttrell v. Carolina Mineral Co.,* 220 N.C. 782, 18 S.E. 2d 412 (1942), (dynamite caps); *Stroud v. Southern Oil Transportation Company,* 215 N.C. 726, 3 S.E. 2d 297 (1939), (flange of damaged truck wheel).

In accord with this principle, it has been held or noted that a manufacturer may be liable for negligence if he sells a dangerous article likely to cause injury in its ordinary use and the manufacturer fails to guard against hidden defects and fails to give notice of the concealed danger. *Prince v. Smith,* 254 N.C. 768, 119 S.E. 2d 923 (1961); *Tyson v. Long Manufacturing Co.,* 249 N.C. 557, 107 S.E. 2d 170 (1959). Similarly, it has been held that one who puts an inherently dangerous article in the stream of commerce owes a duty of care to all those persons who ought to have been reasonably foreseen as likely to use them. *Stegall v. Catawba Oil Company,* 260 N.C. 459, 133 S.E. 2d 138 (1963); *Wyatt v. Equipment Company,* 253 N.C. 355, 117 S.E. 2d 21 (1960). In this regard, our Supreme Court, in *Corprew v. Geigy Chemical Corporation,* 271 N.C. 485, 491, 157 S.E. 2d 98 (1967), quoted the following from Prosser, Law of Torts (3d Ed. 1964) at 665:

Davis v. Siloo Inc.

"He [the manufacturer] may be negligent in failing to inspect or test his materials, or the work itself, to discover possible defects, or dangerous propensities. He may fail to use proper care to give adequate warning to the user, not only as to dangers arising from unsafe design, or other negligence, but also as to dangers inseparable from a properly made product. The warning must be sufficient to protect third persons who may reasonably be expected to come in contact with the product and be harmed by it; and the duty continues even after the sale, when the seller first discovers that the product is dangerous. He is also required to give adequate directions for use, when reasonable care calls for them."

In *Whitley v. Cubberly*, 24 N.C. App. 204, 210 S.E. 2d 289 (1974), as in the instant case, the plaintiff's intestate died from aplastic anemia, although in that case the anomaly resulted from a drug administered to the intestate, whereas in this case the anomaly resulted when the subject chemical came in contact with decedent's skin. In *Whitley* Judge Parker explained that summary judgment for the defendant was improper with respect to plaintiff's claim that the drug manufacturer failed to label the drug container adequately, and that the drug manufacturer failed to make adequate warnings about the dangerous properties of the drug to the medical profession and to consumers of the drug. *Accord, Incollingo v. Ewing*, 444 Pa. 263, 282 A. 2d 206 (1971), (death by aplastic anemia, application of § 388 of the Restatement of Torts 2d). *See also*, Annot. 76 A.L.R. 2d 9 (1961). We can see no reason for not imposing the same duty of care on the manufacturer in the instant case when the same anomaly is apparently a potential consequence of defendant's misfeasance or nonfeasance.

[1] We now hold: (1) that a chemical, which, when it comes in contact with the skin of a human being not subject to rare allergenic responses, can cause serious bodily injury, illness or death to the human being, is a dangerous instrumentality or substance; and (2) that the manufacturer of the dangerous substance will be subject to liability under a negligence theory for damages which proximately result from the failure to pro-

vide adequate warnings as to the product's dangerous propensities which are known or which by exercise of care commensurate with the danger should be known by the manufacturer, or from the failure to provide adequate directions for the foreseeable user as to how the dangerous product should or should not be used with respect to foreseeable uses. Consequently, the plaintiff appellant has alleged facts sufficient to state a claim for Siloo's liability predicated upon negligence.

B. *Warranties.*

[2] The trial court did not err in dismissing the plaintiff's claim against the manufacturer for breach of warranty, either express or implied. Plaintiff's claim for breach of implied warranty is barred by the lack of contractual privity between the plaintiff and the manufacturer. While this rule will be changed by the new Products Liability Act, *supra*, the effective date of that Act postdates the filing of this action. Moreover, while the Supreme Court in the recent case of *Kinlaw v. Long Mfg. Co.*, 298 N.C. 494, 259 S.E. 2d 552 (1979), held that the absence of privity will not bar an action on express warranty, the court in *Kinlaw* did not elect to extend this rule to implied warranties.

[3] With respect to plaintiff's claim that the label creates an express warranty that the product Petisol 202 will not be harmful to the skin, we note that a court, as a matter of law, must construe the terms of a contract, and, in construing the above-quoted language on the label of the Petisol 202 container, we hold that the language is not sufficient to create an express warranty that the Petisol 202 will not be harmful when exposed to the skin on a user's arms.

The purported warranty in this case is distinguishable from that in *Simpson v. American Oil Company*, 217 N.C. 542, 8 S.E. 2d 813 (1940), upon which the plaintiff relies. In *Simpson* the label on a can of insecticide expressly stated: "Amox is made for the purpose of killing insects, *it is not poisonous to human beings* .... *Amox Liquid Spray is non-poisonous to human beings*, but is not suited for internal use. ..." (Emphasis supplied). The Court in *Simpson* focused on the common meaning of "poison" and held that the assurance that the product

was non-poisonous to human beings constituted a warranty on the part of the original seller. Admittedly, the language in *Simpson* comes close to that found on the label of the Petisol 202; nonetheless, there is nothing on the label of the Petisol 202 can which rises to the level of the express assurance in *Simpson* that the product was non-poisonous, and we cannot accept plaintiff's argument that an express warranty is created by implication from the language on the label.

## II. NAPA AND GENUINE PARTS COMPANY
### (Distributors)

The trial court did not err in dismissing plaintiff's claims as to NAPA and Genuine Parts Company.

[4]  With respect to plaintiff's negligence claims, it is significant that plaintiff alleged that Petisol 202 was manufactured and packaged by Siloo Incorporated. The general rule has been stated as follows: "[T]he seller of a product manufactured by another, who neither knows, nor has reason to know, that the product is, or is likely to be, dangerously defective, has no duty to test or inspect it. Especially is this true where the product is sold in its original package or container, as it came from the manufacturer, and the seller acts as a mere marketing conduit between producer and consumer. Similarly, the seller of a product is ordinarily not liable for his failure to discover, through tests and inspections, product defects which are latent, even where the product is not sold in its original package." Annot. 6 A.L.R. 3d 12, 17 (1966). *See, also, Cockerham v. Ward*, 44 N.C. App. 615, 262 S.E. 2d 651 (1980). This rule is subject to several exceptions: "where the defect is patent, where the seller undertakes to perform auxiliary functions in connection with the sale, such as preparation, installation, or repair, where the duty [to test and inspect] is a matter of statutory law, where the merchandise is used or second hand, where the seller makes representations concerning the product, and where the seller has actual knowledge or is otherwise put on notice of the dangerous nature of the product." Annot. 6 A.L.R. 3d at 17. The plaintiff has alleged no facts which would compel us to apply an exception rather than the general rule. In this case both NAPA and Genuine Parts are "middlemen" and in this role each "is no

more than a conduit, a mere mechanical device through which the thing is to reach the ultimate consumer." *Corprew, supra,* 271 N.C. at 491.

Nor has the plaintiff stated a claim against both NAPA and Genuine Parts Company based on a warranty, either express or implied. As with Siloo Incorporated, the implied warranty claim is barred because plaintiff is not in privity of contract with the two middlemen. Similarly, there are no markings on the label which indicate any representation, much less an express warranty, made by either NAPA or Genuine Parts.

[5] Plaintiff's claim that NAPA made a warranty by undertaking advertising to induce the public to rely upon NAPA retailers to supply products to be safe and suitable is more difficult to resolve. There are numerous cases in which it was held that advertising by the manufacturer or bottler of a specific soft drink constituted a warranty by the manufacturer that the product was safe for consumption. *See, e.g., Tedder v. Bottling Co.,* 270 N.C. 301, 154 S.E. 2d 337 (1967). In those cases, however, a specific product was advertised and the trademark of the manufacturer or bottler appeared on the package itself. In contrast, the uncontested affidavit of NAPA's representative, indicates that "Petisol 202 is not a NAPA line, that NAPA does not buy, sell, approve for sale, advertise, or classify Petisol 202 for itself or for any other buyer; [and] that Petisol 202 does not bear the NAPA trade name or mark." The mere fact that Petisol 202 was sold by a retailer which, *inter alia,* sells NAPA approved parts, is not sufficient for the product to come within a warranty, express or implied, which might be created as a result of NAPA's advertising. *See, generally,* Annot. 75 A.L.R. 2d 112 § 11 (1961).

III. HENDERSONVILLE SERVICE PARTS, INC. (Seller)

[6] For the same reasons discussed in Part II immediately above, we hold that the lower court did not err in dismissing plaintiff's negligence claim against Hendersonville Service Parts, Inc. Similarly, there is no allegation which indicates that any express warranty has been made by Hendersonville Service Parts, Inc. Moreover, G.S. 25-2-318 specifically limits ac-

tions on warranties, either express or implied, to "any natural person who is in the family or household of his buyer or who is a guest in his home. . . ." This section of the North Carolina version of the Uniform Commercial Code does not contemplate extending implied warranties to employees of purchasers, and even if the new Products Liability Act were effective as to this action, the protections of that Act would not extend to the employee of a purchaser where the employee is covered by worker's compensation insurance. G.S. 99B-2(b).

In conclusion we find that part of the judgment dismissing the actions against NAPA, Service Parts, and Genuine Parts is affirmed; that part of the judgment dismissing the action against Siloo Incorporated for breach of express and implied warranty is affirmed; and that part of the judgment which, by omission, denies the motion to dismiss the action against Siloo Incorporated on the first claim for negligence is affirmed.

Affirmed.

Judges MARTIN (Robert M.) and ERWIN concur.