Myra Y. LEE and Danny A. Lee, Plaintiffs,

v.

CREST CHEMICAL CO., Defendant.

No. C-83-31-G.

United States District Court, M.D. North Carolina, Greensboro Division.

Feb. 9, 1984.

E. Lawson Brown, Jr. of Vernon, Vernon, Wooten, Brown & Andrews, P.A., Burlington, N.C., for plaintiffs.

Arthur A. Vreeland of Tuggle, Duggins, Meschan & Elrod, P.A., Greensboro, N.C., for defendant.

## MEMORANDUM OPINION AND ORDER

HIRAM H. WARD, Chief Judge.

This matter came before the Court on defendants' Motion for Summary Judgment (October 27, 1983) as to plaintiffs' second, third, fifth, and sixth causes of action. The Court received oral argument on February 2, 1984. The Court previously dismissed the first and fourth causes of action. Order (August 8, 1983). Defendant asserted that N.C.Gen.Stat. § 99B–4(1) provides it with a complete defense as to plaintiffs' remaining claims by reason of plaintiff Myra Y. Lee's use of defendant's chemical product in a manner contrary to express and adequate instructions on the product label which the plaintiff read prior to using the product. Defendant further maintained that plaintiff Myra Y. Lee's deposition testimony irrefutably established the defense. Plaintiffs contended that the instructions concerning the manner of use of the product were not express and adequate, but were deceptively misleading as to the antidote.

In Count Two plaintiffs alleged that defendant negligently failed to provide adequate warnings as to the hazards posed by the product and as to the precautions necessary in the course of its use to prevent injuries of the type the plaintiff suffered. In Count Three plaintiffs alleged that the defendant negligently failed to adequately label the product in providing ambiguous, incorrect and incomplete first aid instructions. The alleged failure to adequately warn of the dangerous propensities of the chemical product and to provide unambiguous, correct and complete first aid information underlies Count Five, a claim for breach of implied warranties of merchantability and fitness for use as a household cleaner. Plaintiff Danny A. Lee seeks to recover on a claim of loss of consortium in Count Six. The essential core of plaintiffs' theory in this case is that the instructions on the label were inadequate to cause a reasonable person to fully appreciate the very caustic and dangerous propensities of the cleaner, a product containing 4.032% hydroflouric acid.

The parties do not dispute the essential facts underlying this lawsuit. The purpose of a summary judgment motion "is to smoke out if there is any case, *i.e.*, any genuine dispute as to any material fact, and, if there is no case, to conserve judicial time and energy by avoiding an unnecessary trial and by providing a speedy and efficient summary disposition." *Parsons v. Hornblower & Weeks—Hemphill, Noyes*, 447 F.Supp. 482, 487 (M.D.N.C. 1977), *aff'd*, 571 F.2d 203 (4th Cir.1978), *quoting Bland v. Norfolk & Southern Railway Co.*, 406 F.2d 863, 866 (4th Cir. 1969). After a thorough review of the evidentiary material in support of and in opposition to the defendant's motion, the Court concludes that N.C.Gen.Stat. § 99B–4(1) is a complete defense to plaintiffs' claims and will grant defendant's motion and dismiss this action.

The injury giving rise to this lawsuit is severe chemical burns to the back of plaintiff Myra Y. Lee's hand caused by the accidental, direct exposure of her hand to several drops of Crest Rust Stain Remover. Plaintiff Danny A. Lee had purchased the cleaner at a grocery store several months prior to the injury and had used the cleaner on a bathtub. Plaintiff Myra Y. Lee decided to use the cleaner on a rusty can opener. Prior to using the cleaner she read the instructions on the label which directed her to "Wear rubber gloves" and "Avoid Contact With Skin." The label also advised her that the cleaner "Will cause burns that are

not immediately painful" following a "DANGER" warning. (Underlined quotes indicate words were all-caps). On the rear panel was a skull and cross-bones, followed by the words "DANGER POISON" in bold type. She read the label and rear panel to be sure there would be no caustic fumes caused by pouring the cleaner on metal. Plaintiff Myra Y. Lee had rubber gloves and intended to use them before handling the can opener after coating it with the cleaner because she believed the cleaner to be caustic. However, she did not wear the gloves when she attempted to pour some of the cleaner on the can opener as it lay in a wooden bowl. Mrs. Lee, a registered nurse, stated that she was unfamiliar with dilute hydroflouric acid which the label indicated was the contents of the cleaner. Unfortunately, when she tilted the bottle over the chemical cleaner squirted out faster than she expected splattering several drops on her hand. She immediately followed the first aid procedure outlined on the bottle—she soaked her hand in running water for 3 to 5 minutes and in iced alcohol swabs. At that time her hand did not appear red or swollen and there was no pain. Plaintiff resumed other household activities but about 45 minutes later she felt a stinging sensation on her hand and noticed small brown spots on the back of her hand. The plaintiff did not become concerned because she believed the chemical was merely a household cleaner, no more caustic than oven cleaner and because she had followed a first aid procedure described on the bottle for external exposure. Her husband was more concerned and the couple went to the emergency room of the local hospital. At the emergency room doctors gave plaintiff pain medication and repeated the first aid procedure (water and iced alcohol). The brown spots gradually grew to the size of dimes and plaintiff Myra Y. Lee travelled to another hospital where surgery was later performed to excise the necrotic tissue and any remaining unneutralized acid.

Section 99B–4(1) is part of the State's Products Liability Act, N.C.Gen. Stat. §§ 99B–1— –10, and provides as follows:

> No manufacturer or seller shall be held liable in any product liability action if:
>
> (1) The use of the product giving rise to the product liability action was contrary to any express and adequate instructions or warnings delivered with, appearing on, or attached to the product or on its original container or wrapping, if the user knew or with the exercise of reasonable and diligent care should have known of such instructions or warnings; provided, that in the case of prescription drugs or devices the adequacy of the warning by the manufacturer shall be determined by the prescribing information made available by the manufacturer to the health care practitioner;
>
> . . . .

The statute codifies a form of contributory negligence. Blanchard and Abrams, *North Carolina's New Products Liability Act: A Critical Analysis,* 16 Wake Forest L.Rev. 171, 175 (1980). Failure to adequately warn of dangerous propensities may also underlie a claim of breach of the implied warranty of merchantability. *Reid v. Eckerds Drugs, Inc.,* 40 N.C.App. 476, 253 S.E.2d 344, *cert. denied,* 297 N.C. 612, 257 S.E.2d 219 (1979).

In *Davis v. Siloo, Inc.,* 47 N.C.App. 237, 267 S.E.2d 354, *cert. denied,* 301 N.C. 234, 283 S.E.2d 131 (1980), the deceased died as a result of exposure to the defendant's chemical product, a solvent. The product label advised the user to avoid prolonged contact with skin and to "Call a physician immediately." The label also advised the user concerning treating contaminated skin by washing the area and rubbing on an oily substance. The deceased contracted aplastic anemia through ordinary use of the solvent because his skin absorbed it. The court noted that a manufacturer's duty of care is "commensurate with the degree of danger involved and that a highly dangerous substance ... requires the 'highest' care or the 'utmost' caution." 47 N.C.App.

at 244, 267 S.E.2d at 358–359. The court concluded

> (1) that a chemical, which, when it comes in contact with the skin of a human being not subject to rare allergenic responses, can cause serious bodily injury, illness or death to the human being, is a dangerous instrumentality or substance; and (2) that the manufacturer of the dangerous substance will be subject to liability under a negligence theory for damages which proximately result from the failure to provide adequate warnings as to the product's dangerous propensities which are known or which by exercise of care commensurate with the danger should be known by the manufacturer, or from the failure to provide adequate directions for the foreseeable user as to how the dangerous product should or should not be used with respect to foreseeable uses.

47 N.C.App. at 245–46, 267 S.E.2d at 359. The court denied the motion to dismiss because the plaintiff had alleged that the defendant represented the chemical not to be dangerous except for a risk of dry skin from prolonged exposure. *Davis* follows the general rule that the manufacturer has a duty to warn of known dangers which can be encountered during foreseeable use of the product. The plaintiff in *Davis* contracted aplastic anemia during normal use of the solvent.

■ The defendant here warned the plaintiffs that there was danger involved in the use of the product and of the type of injury Myra Y. Lee suffered during normal use of the cleaner. She received chemical burns and the label expressly warns that the cleaner *"Will cause burns that are not immediately painful."* Also, the label twice, once in bold print, warns the user to avoid contact with skin and in addition to wear rubber gloves. Although the admonition to wear rubber gloves is not in bold print, other bold print on the front label directs the user to that admonition concerning use and precautions.

The facts in this case for purposes of this motion indicate that the briefest contact with the cleaner can result in a painful burn.[1] Plaintiffs contend that despite the several warnings on the label the instructions and warnings are inadequate to inform a user of the cleaner's apparent extremely caustic nature under the circumstances. They also contend that the plaintiff Myra Y. Lee did not and could not reasonably be expected to appreciate the dangers of "dilute hydroflouric acid" when it is contained in a cleaner sold at a grocery store as a domestic cleaner. Plaintiff Myra Y. Lee believed that she would be all right because she rinsed her hand and soaked it in iced alcohol as the label directed. Deposition of Myra Y. Lee at 24–25 (October 27, 1983). Plaintiffs interpret the label's instructions regarding the steps to be taken in case the cleaner is ingested or spilled on skin or in an eye as suggested remedies to prevent harm.

These first aid instructions clearly do not expressly state that no burn or severe burn will result from exposure if the instructions are followed. Apparently, plaintiffs would argue that the first aid instructions indirectly convey that message because they do *not* say that severe burns will not result if the user follows the instructions. To draw such an indirect message is a strained exercise. These first aid measures follow the admonition to call a physician immediately as well as stressed warnings of danger, the need to avoid contact with skin, and the fact that the cleaner will burn. At best the first aid instructions are merely advice on the best actions to take pending medical assistance.

Defendant asserts that Mrs. Lee's failure to wear rubber gloves as instructed provides it with a complete defense under N.C. Gen.Stat. § 99B–4(1). Mrs. Lee knew of this instruction and testified that her hand probably would not have been burned if she had been wearing rubber gloves. Deposition of Myra Y. Lee at 37. Plaintiffs' counsel conceded at oral argument that had

---

1. Plaintiffs submitted an affidavit from Dr. Hugh D. Peterson concerning the destructive capacity of a 4% solution of hydroflouric acid and treatment for acid burns.

Mrs. Lee worn gloves, she would not have been burned. Mrs. Lee's appreciation of the cleaner's caustic nature and the need to wear gloves is evident in her intent to put on gloves before proceeding further. Deposition of Myra Y. Lee at 37. These gloves were inches away from Mrs. Lee at the time of the accident. Mrs. Lee would not have been burned *but for* her failure to follow instructions concerning a safety precaution. Mrs. Lee's omission was the proximate cause of the very injury she suffered. If followed, the instruction was adequate to protect injury to Mrs. Lee's hand.

IT IS, THEREFORE, ORDERED, that defendant's motion for summary judgment as to plaintiffs' remaining claims be, and the same hereby is, GRANTED.

A Judgment dismissing this action will be entered accordingly.