ESTATE OF JACQUELINE MELISSA MULLIS, by KATHY DIXON, Administrator v. MONROE OIL COMPANY, INCORPORATED, CITY OF MONROE ALCOHOLIC BEVERAGE CONTROL, LISTON S. DARBY, Administrator of the Estate of Dwaine Lydell Darby, and the Estate of Otis Stephen Blount

No. 426PA97

(Filed 9 October 1998)

**1. Intoxicating Liquor § 48 (NCI4th)— sale of alcohol to underaged persons—no claim for negligence per se**

The Court of Appeals correctly determined that a plaintiff may not maintain a negligence *per se* action based on a violation of N.C.G.S. § 18B-302. The purpose of N.C.G.S. § 18B-302 is to restrict minors' consumption of alcohol; it is not therefore a public safety statute and cannot be the basis for a negligence *per se* claim.

**2. Intoxicating Liquor § 69 (NCI4th)— sale of alcohol to underaged person—common law negligence action—not excluded by Dram Shop Act**

A common law negligence suit may be maintained against a commercial vendor based on a sale of alcohol to an underaged person, provided that the plaintiff in such a case presents sufficient evidence to satisfy all elements of a common law negligence suit, that is, duty, breach of duty, proximate cause, and damages. The Dram Shop cause of action was not intended to be the exclusive remedy available to a third party who wishes to assert a negligence suit against a seller based on the sale of alcohol to an underaged person. N.C.G.S. §§ 18B-120 to 129.

**3. Intoxicating Liquor § 64 (NCI4th)— sale of alcohol to underaged person—common law negligence claim—evidence insufficient**

The trial court correctly granted summary judgment for defendants on a common law negligence claim based on the sale of alcohol to a twenty-year-old who was subsequently involved in an automobile accident where the evidence offered by plaintiff indicated merely that defendant sold alcohol to an individual who was later discovered to be underage. Evidence of this alone, without an offer of some additional factor or factors which would put the vendor on notice that harm was foreseeable, is insufficient to establish the duty element and thus maintain a common law negligence suit.

ESTATE OF MULLIS v. MONROE OIL CO.

[349 N.C. 196 (1998)]

Justice WYNN did not participate in the consideration or decision of this case.

Justice FRYE concurring.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 127 N.C. App. 277, 488 S.E.2d 830 (1997), affirming the trial court's grant of summary judgment for defendants Monroe Oil Company and City of Monroe Alcoholic Beverage Control by Martin (Jerry Cash), J., on 10 May 1996 in Superior Court, Union County. Heard in the Supreme Court 11 February 1998.

*Clark, Griffin & McCollum, by Joe P. McCollum, Jr., and William L. McGuirt, for plaintiff-appellant.*

*Womble Carlyle Sandridge & Rice, P.L.L.C., by Timothy G. Barber and Steven D. Gardner, for defendant-appellee Monroe Oil Company.*

*R. Gregory Lewis, Anna L. Baird, and Joseph E. Wall for defendant-appellee Monroe ABC.*

ORR, Justice.

This case arises out of a drunk-driving accident in which four young people were tragically killed. On 30 April 1993, the four persons involved, Otis Blount, twenty; Dwaine Darby, nineteen; Melissa Mullis, fifteen; and Patricia Teel, eighteen, decided to meet several other individuals at a local teen nightclub in Monroe between 7:00 and 8:00 p.m. Before meeting at the Monroe club, Blount bought some liquor for himself and two other individuals from a store operated by defendant City of Monroe Board of Alcoholic Beverage Control ("Monroe ABC"). Blount returned to the same Monroe ABC store later that evening and bought some more liquor for himself and the other individuals. Later, Blount left the club again and this time bought beer from a convenience store owned by defendant Monroe Oil Company, Inc. ("Monroe Oil").

At about 11:00 p.m., Blount, Darby, Mullis, and Teel decided to go to a party at a friend's house. The four got into Darby's Volkswagen Jetta: Darby in the driver's seat; Blount in the front passenger seat; and the two girls, Mullis and Teel, in the back passenger seat. Prior to leaving the club, Blount was given money which had been collected at the club to buy beer for the party, and on the way to the party,

**ESTATE OF MULLIS v. MONROE OIL CO.**

[349 N.C. 196 (1998)]

Darby stopped at the convenience store owned by Monroe Oil so that Blount could buy the beer. Two other carloads of teenagers in the group also stopped at the store.

After Blount bought the beer, he returned to Darby's car and got behind the wheel to drive. Darby sat in the front passenger seat, and the two girls remained in the backseat. After consuming alcohol in the parking lot, Blount drove the car out of the parking lot and headed towards the location of the party. Moments later, at approximately midnight, Blount drove the car off the road into a tree. The car caught fire, killing all four occupants. An officer responding to the scene concluded that Blount's alcohol use contributed to the accident. Blount's autopsy report also revealed that his blood-alcohol content was 0.13 at the time of the accident, an amount exceeding the then-legal limit of 0.10 alcohol content under our impaired-driving statute, N.C.G.S. § 20-138.1 (1989) (amendment for offenses committed on or after 1 October 1993 substituted "0.08" for "0.10").

Based on the above, the administrator of the estate of Melissa Mullis, one of the passengers, filed suit alleging that defendants Monroe ABC and Monroe Oil were negligent for selling alcohol to an underage person under the Dram Shop Act, N.C.G.S. §§ 18B-120 to -129 (1995). Plaintiff brought the action under N.C.G.S. §§ 28A-18-1 to -18-8, dealing with the survival of actions and wrongful-death provisions. Defendants answered the complaint and moved to dismiss it for failure to state a claim upon which relief could be granted, pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. In their 12(b)(6) motions, defendants contended that the Dram Shop action should be dismissed because plaintiff had failed to file the complaint within the statute of limitations period under the Act. Plaintiff then filed a motion to amend the complaint, which was granted on 11 April 1995. In the amended complaint, plaintiff withdrew the Dram Shop action and asserted a negligence *per se* claim alleging that defendants' acts were in violation of N.C.G.S. § 18B-102, which prohibits the illegal sale of alcohol, and, more specifically, were in violation of N.C.G.S. § 18B-302, which prohibits the sale of alcohol to underage persons. In addition to the negligence *per se* claim, plaintiff also alleged that defendants were liable for the negligent sale of alcohol to an underage person under common law negligence.

Defendants renewed the 12(b)(6) motions to dismiss the complaint, and both motions were denied. Defendants subsequently

ESTATE OF MULLIS v. MONROE OIL CO.

[349 N.C. 196 (1998)].

moved for summary judgment pursuant to Rule 56 of the North Carolina Rules of Civil Procedure, arguing that there was no genuine issue as to any material fact as shown by the pleadings, depositions, and responses, and that defendants were entitled to judgment as a matter of law. The trial court granted the summary judgment motions for defendants on 10 May 1996, and plaintiff appealed.

The Court of Appeals affirmed the trial court's decision and held that plaintiff's sole and exclusive remedy was under the Dram Shop Act. The Court of Appeals explained that to maintain a wrongful-death suit, plaintiff/estate had to show that the deceased, Melissa Mullis, could have maintained a negligence action against defendants if she had lived. N.C.G.S. § 28A-18-2 (1984) (amended 1995); *Sorrells v. M.Y.B. Hospitality Ventures of Asheville*, 332 N.C. 645, 647, 423 S.E.2d 72, 73 (1992); *Carver v. Carver*, 310 N.C. 669, 673, 314 S.E.2d 739, 742 (1984). The Court of Appeals concluded that, here, a negligence *per se* or common law negligence claim could not be so maintained based on this Court's decision in *Hart v. Ivey*, 332 N.C. 299, 420 S.E.2d 174 (1992). The Court of Appeals stated that a negligence *per se* action could not be maintained because this Court held in *Hart* that a violation of N.C.G.S. § 18B-302 is not negligence *per se*. *Estate of Mullis v. Monroe Oil Co.*, 127 N.C. App. 277, 279, 488 S.E.2d 830, 832 (1997). Plaintiff, therefore, could not establish that defendants' violation of N.C.G.S. § 18B-302 in this case was negligence *per se*. *Id.*

The Court of Appeals also held that plaintiff could not maintain a common law negligence claim against defendants for selling alcohol to an underage person. The Court of Appeals explained that in *Hart*, this Court held that a common law negligence suit could be maintained against a social host for furnishing alcohol to an underage guest if it was shown that the social host served alcohol to the guest when the host knew or should have known that the guest was intoxicated and was going to drive a car. *Id.* at 280, 488 S.E.2d at 832. The Court of Appeals noted that, here, plaintiff did not allege that defendants knew or should have known that Otis Blount was intoxicated when defendants sold him the alcohol on 30 April 1993. *Id.* Emphasizing plaintiff's failure to allege knowledge of intoxication, the Court of Appeals concluded that a common law negligence action could not be maintained and that the Dram Shop Act provided the sole cause of action available to plaintiff. The Court of Appeals stated that since plaintiff failed to timely file an action under the Dram Shop Act, the trial court's grant of summary judg-

ment was proper. For reasons set forth below, we affirm the Court of Appeals' decision affirming the trial court's orders of summary judgment for defendants.

[1] The issues in this case are whether plaintiff may maintain negligence claims against defendant commercial vendors for selling alcohol to an underage person on two grounds: (1) negligence *per se*, based on a violation of N.C.G.S. § 18B-302; and (2) common law negligence. First, the Court of Appeals correctly determined that plaintiff may not maintain a negligence *per se* action based on a violation of N.C.G.S. § 18B-302. In *Hart v. Ivey*, 332 N.C. 299, 420 S.E.2d 174, this Court reversed the Court of Appeals and held that a violation of N.C.G.S. § 18B-302 is not negligence *per se*. Under N.C.G.S. § 18B-302, it is a misdemeanor to give or sell alcoholic beverages to anyone less than twenty-one years old. *Id.* at 306, 420 S.E.2d at 178. In a divided opinion, this Court held that a violation of N.C.G.S. § 18B-302 was not negligence *per se* because the statute was not a public safety statute which imposed a duty for the protection of the public. *Id.* at 303-04, 420 S.E.2d at 177. The majority in *Hart* concluded that the purpose of N.C.G.S. § 18B-302 was to restrict minors' consumption of alcohol, that it was therefore not a public-safety statute, and that it could not be the basis for a negligence *per se* claim. In light of the majority decision in *Hart*, we are bound in this case to conclude that plaintiff may not maintain a negligence *per se* action based on a violation of N.C.G.S. § 18B-302.

[2] The next issue we must address is whether plaintiff may maintain a common law negligence action against defendant commercial vendors arising out of the sale of alcohol to an underage person. Presently, commercial vendors are subject to liability for the negligent sale of alcohol to an underage person under the North Carolina Dram Shop Act. N.C.G.S. §§ 18B-120 to -129. Any effect that the Dram Shop Act may have on the existence of a common law negligence suit must be addressed first since the Act was specifically created to impose liability for the conduct upon which plaintiff's suit is based.

Under the Dram Shop Act, an aggrieved party has a claim against a "permittee or local Alcoholic Beverage Control Board" if the party shows that the seller "negligently sold or furnished an alcoholic beverage to an underage person," that consumption of the beverage caused or contributed to the underage driver's impairment, and that the injury which resulted was "proximately caused by the underage

driver's negligent operation of a vehicle while so impaired." N.C.G.S. § 18B-121. The legislature has also provided that "[t]he creation of any claim for relief by this Article may not be interpreted to abrogate or abridge any claims for relief under the common law." N.C.G.S. § 18B-128. Under this section, the legislature has made clear that previously existing common law rights are preserved. We may conclude, therefore, that the Dram Shop cause of action was not intended to be the exclusive remedy available to a third party who wishes to assert a negligence suit against a seller based on the sale of alcohol to an underage person.

In addition to the Dram Shop Act's not excluding common law remedies, this Court held in *Hart v. Ivey*, 332 N.C. 299, 420 S.E.2d 174, that a common law negligence claim could exist for the negligent provision of alcohol by a social host. There, we held that a common law negligence claim could be maintained where the plaintiff alleged that the social host provided alcohol to an underage guest when the host knew or should have known that the guest was intoxicated and was going to drive a car shortly after consuming the alcohol. In acknowledging this common law claim in *Hart*, we stated that we were not creating a new cause of action but were instead merely allowing "established negligence principles" to be applied to the facts alleged. *Id.* at 306, 420 S.E.2d at 178. We stated that, under established common law negligence principles, a plaintiff must offer evidence of four essential elements in order to prevail: duty, breach of duty, proximate cause, and damages. *Id.* at 305, 420 S.E.2d at 177-78; *see Lamm v. Bissette Realty, Inc.*, 327 N.C. 412, 395 S.E.2d 112 (1990). In *Hart*, we further explained that

> [a]ctionable negligence is the failure to exercise that degree of care which a reasonable and prudent person would exercise under similar conditions. A defendant is liable for his negligence if the negligence is the proximate cause of injury to a person to whom the defendant is under a duty to use reasonable care.

*Hart*, 332 N.C. at 305, 420 S.E.2d at 177-78.

Applying these long-standing negligence rules to the plaintiff's allegations in *Hart*, we concluded that the plaintiff's factual averments were sufficient to satisfy all common law negligence elements. First, the defendants had a "duty to the people who travel on the public highways not to serve alcohol to an intoxicated individual who was known to be driving." *Id.* at 305, 420 S.E.2d at 178. Furnishing alcohol to a noticeably intoxicated person who is going to drive

would constitute a breach of that duty, and a jury could determine that this breach proximately caused harm.

The Court next addressed social-host liability in *Camalier v. Jeffries*, 340 N.C. 699, 460 S.E.2d 133 (1995). In *Camalier*, Charles Jeffries attended a party at the home of defendant Frank Daniels and consumed several gin and tonics over a three-hour period. Jeffries then left the party in his car and collided into a car driven by Caleb Camalier. Camalier died from injuries received in the accident, and his estate asserted a common law negligence claim against the social hosts of the party. The trial court later granted summary judgment for the defendants, and the Court of Appeals affirmed. *See Camalier v. Jeffries*, 113 N.C. App. 303, 438 S.E.2d 427 (1994). We subsequently affirmed the Court of Appeals' decision, finding that summary judgment for the defendants was proper. We determined that evidence presented by the plaintiffs established that the hosts had served Jeffries alcohol and that the hosts knew that Jeffries was going to drive a car shortly after consuming the alcohol. The plaintiffs' evidence failed, however, to show whether the social hosts *knew or should have known* that Jeffries was intoxicated when they served him the alcohol. While the plaintiffs' evidence did show that Jeffries had a blood-alcohol concentration of 0.191 and that he was visibly intoxicated after the accident, it failed to show that he was visibly intoxicated while at the party or that anyone at the party should have known that he was intoxicated. No one at the party said that Jeffries appeared intoxicated, and fifty-three people who were present at the party expressly stated that he *did not* appear intoxicated. Thus, we held that the plaintiffs in *Camalier* failed to produce sufficient evidence to establish a common law negligence claim against the social host.

Applying the foregoing principles developed in *Hart* and *Camalier* to the present case, we conclude that a common law negligence suit may be maintained against a commercial vendor, based on a sale of alcohol to an underage person, provided that the plaintiff in such a case presents sufficient evidence to satisfy all elements of a common law negligence suit, that is, duty, breach of duty, proximate cause, and damages. As was the case in *Hart*, we do not recognize a new cause of action but merely allow "established negligence principles" to be applied to the facts of plaintiff's case.

[3] Having determined that a common law cause of action may be maintained for the negligent sale of alcohol to an underage person if

all common law negligence elements are satisfied, we must now determine whether plaintiff's forecast of evidence was sufficient to establish a *prima facie* case of common law negligence. Pursuant to Rule 56(c) of the North Carolina Rules of Civil Procedure, dealing with summary judgment motions, "[t]he motion shall be allowed and judgment entered when such evidence reveals no genuine issue as to any material fact, and when the moving party is entitled to a judgment as a matter of law." *Koontz v. City of Winston-Salem*, 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972). The party moving for summary judgment meets its burden "by proving that an essential element of the opposing party's claim is non-existent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim." *Boudreau v. Baughman*, 322 N.C. 331, 342, 368 S.E.2d 849, 858 (1988), *quoted in Camalier*, 340 N.C. at 710-11, 460 S.E.2d at 138. To survive a motion for summary judgment, the nonmoving party must therefore " 'forecast sufficient evidence of all essential elements of [his] claim[]' to make a *prima facie* case at trial." *Camalier*, 340 N.C. at 711, 460 S.E.2d at 138 (quoting *Waddle v. Sparks*, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992)).

Plaintiff's forecast of evidence showed the following: On the night of 30 April 1993, Otis Blount, who was twenty years old and under the legal age to buy alcohol, purchased alcohol twice from defendant Monroe ABC and twice from defendant Monroe Oil. Melissa Baucom stated in her deposition that she drove Blount to the Monroe ABC store twice that evening to buy liquor for himself and two other individuals; she also stated that she later drove Blount to an Amoco station convenience store owned by Monroe Oil, where he bought beer. Several other teenagers stated that shortly after 11:00 p.m., Blount went back to the Amoco station owned by Monroe Oil with Darby in Darby's car and purchased more beer. Witnesses present stated that Melissa Mullis and Patty Teel were with Blount in Darby's car when Darby and Blount drove to the Amoco station to buy the beer. Aaron Tedder and Christopher Mullis, two teenagers present that night, stated that they saw Blount walk out of the Amoco station with beer and drink a portion of it in the parking lot. Blount then drove Darby's Volkswagen from the Amoco station; a short time later, he drove the car off the road and into a tree, killing himself and the other car occupants, Melissa Mullis, Patty Teel, and Dwaine Darby.

Other evidence tended to show that, although Blount was intoxicated, he did not readily appear so. Blount's autopsy report revealed

that he had a blood-alcohol content of at least 0.13 and was therefore driving while impaired; an officer who responded to the scene also concluded that Blount's alcohol use caused the accident. Melissa Baucom, however, stated that she did not notice anything unusual about Blount's eyes or speech to indicate that he had been drinking, adding that it was usually difficult to tell if Blount had been drinking alcohol. Several other teenagers stated that Blount's speech was normal that evening, that he was walking straight and had control over his body motions, and that he did not smell of alcohol. Tommy Quick, another teenager present that night, stated that he had not seen Blount drink that evening, but that the only way to tell if Blount was intoxicated was "if you knew him." Quick stated that "Otis [Blount] usually when he drinks, he gets in a cheery mood . . . . If you didn't know him, he would be sober to you." Several other witnesses also stated that Blount was not noticeably intoxicated and that it would be difficult to know when he was because he did not typically show outward signs of intoxication.

While plaintiff's evidence tends to show that defendants Monroe Oil and Monroe ABC illegally sold alcohol to Blount on 30 April 1993 and that Blount shortly thereafter drove a car while impaired and caused irrevocable harm, it fails to forecast sufficient evidence to make a *prima facie* case for common law negligence. Plaintiff has not established that defendants owed a duty based on a forecast of evidence showing only that defendants sold alcohol to an individual who was later found to be an underage person. As we have explained, a duty is " 'an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another.' " *Peal v. Smith*, 115 N.C. App. 225, 230, 444 S.E.2d 673, 677 (1994) (quoting W. Page Keeton et al., *The Law of Torts* § 53 (5th ed. 1984)), *aff'd per curiam*, 340 N.C. 352, 457 S.E.2d 599 (1995). A legal duty is owed " 'whenever one person is by circumstances placed in such a position [towards] another that every one of ordinary sense who did think would at once recognize that if he did not use ordinary care and skill in his own conduct with regard to those circumstances he would cause danger of injury to the person or property of the other.' " *Dail v. Taylor*, 151 N.C. 285, 287, 66 S.E. 135, 136 (1909) (quoting *Heaven v. Pender*, XI Q.B.D. 503, 509 (1883)). " 'Every man is in general bound to use care and skill in his conduct wherever the reasonably prudent person in his shoes would recognize unreasonable risk to others from failure to use such care.' " *Firemen's Mutual Ins. Co. v. High Point Sprinkler Co.*, 266 N.C. 134, 140-41, 146 S.E.2d 53, 60 (1966) (quoting 2 Fowler V. Harper & Fleming James, Jr., *The*

ESTATE OF MULLIS v. MONROE OIL CO.

[349 N.C. 196 (1998)]

*Law of Torts* § 28.1, at 1535 (1956). Risk-creation behavior thus triggers duty where the risk is both unreasonable and foreseeable. Charles E. Daye & Mark W. Morris, *North Carolina Law of Torts* § 16.30, at 135 (1991); David A. Logan & Wayne A. Logan, *North Carolina Torts* § 1.10, at 7 (1996). As explained by Justice Cardozo in his classic analysis of duty in *Palsgraf*:

> We are told that one who drives at reckless speed through a crowded city street is guilty of a negligent act and therefore of a wrongful one, irrespective of the consequences. Negligent the act is, and wrongful in the sense that it is unsocial, but wrongful and unsocial in relation to other travelers, only because *the eye of vigilance perceives the risk of damage. . . . The risk reasonably to be perceived defines the duty to be obeyed,* and risk imports relation; it is risk to another or to others within the range of apprehension.

*Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 344, 162 N.E. 99, 100 (1928) (emphasis added). "[T]he orbit of the danger as disclosed to the eye of reasonable vigilance [is] the orbit of the duty." *Id.* at 343, 162 N.E. at 100.

In this case, there is no evidence showing that the defendant commercial vendors should have recognized that Mullis, or anyone similarly situated might be injured by their conduct, and thus there was no duty. Plaintiff's evidence tends to show that defendants sold alcohol to Blount on 30 April 1993 and that Blount consumed some of the alcohol prior to driving Darby's car. Although the evidence tends to show that a sale was made, plaintiff's evidence fails to show that defendants should have perceived that the sale of alcohol to Blount was going to create an unreasonable risk of harm to third persons. The evidence in fact fails to indicate that the sellers should have been aware that anything but an ordinary transaction was occurring when selling the alcohol to Blount. Blount did not appear inebriated that evening according to observers, and there is no evidence in the record showing that Blount was noticeably intoxicated when buying the alcohol from defendants. Plaintiff's evidence tends to show the contrary: that although Blount may have been intoxicated, he appeared sober throughout the evening when buying liquor from Monroe ABC and when buying beer from the Amoco station owned by Monroe Oil.

There was also no evidence tending to show that the defendant commercial vendors should have known that Blount was going to

drive a car even if he had appeared inebriated. The evidence tended to show instead that, as previously stated, Blount did not appear intoxicated and that every time he purchased alcohol from defendants, he was driven to the store by other persons and was not driving a car. Thus, from the perspective of the vendors, this was an ordinary transaction for the sale of alcohol to a person who was driven to the store by another. Thus, there was no indication that foreseeable harm would occur from the sale of alcohol to Blount.

Such a scenario is quite different from that which occurred in *Hart* where the facts alleged were sufficient to establish foreseeability and the duty element. The plaintiff's allegations in *Hart* that the host served alcohol to an underage person who the host knew or should have known was intoxicated and was going to shortly drive a car were sufficient to show that the host should have perceived a risk of harm. There, we stated that a jury could find that "a man of ordinary prudence would have known that such or some similar injurious result was reasonably foreseeable from this negligent conduct." *Hart*, 332 N.C. at 305, 420 S.E.2d at 178. Furnishing alcohol to an intoxicated driver was conduct creating an unreasonable risk of harm to others. In such a situation, the host could also perceive the risk: Serving alcohol to an inebriated individual who is going to drive is a foreseeable risk "clear to the ordinarily prudent eye." *Munsey v. Webb*, 231 U.S. 150, 156, 58 L. Ed. 162, 166 (1913).

Such is not the case here. No evidence tended to show that defendants should have been aware that selling alcohol to Blount could produce foreseeable harm and subject other drivers or passengers to an unreasonable risk of harm. Evidence offered by plaintiff indicated merely that defendants sold alcohol to an individual who was later discovered to be underage. Evidence of this alone, without an offer of some additional factor or factors which would put the vendor on notice that harm was foreseeable, is insufficient to establish the duty element and thus maintain a common law negligence suit. It was necessary, in other words, for plaintiff's forecast of evidence to point to some additional factor or factors that would alert the defendant commercial vendors that the act of selling the alcohol would likely produce some foreseeable injury. Whether harm is foreseeable simply depends on the circumstances of each case and is not determined according to any predetermined set of factors. However, since plaintiff's forecast of evidence failed to have such an additional factor or factors which would have enabled the vendors to foresee that

ESTATE OF MULLIS v. MONROE OIL CO.

[349 N.C. 196 (1998)]

harm was, in all likelihood, going to occur, the duty element is not satisfied, and plaintiff's *prima facie* case must fail.

Thus, based on the foregoing, plaintiff has not produced a sufficient forecast of evidence to maintain a common law negligence claim against defendants based on the sale of alcohol to Otis Blount. Accordingly, we affirm the Court of Appeals' decision affirming the trial court's grant of summary judgment for defendants.

AFFIRMED.

Justice WYNN did not participate in the consideration or decision of this case.

Justice FRYE concurring.

I agree with the majority that plaintiff has not produced a sufficient forecast of evidence to maintain a common law negligence claim against defendants based on the sale of alcohol to Otis Blount. However, the crucial question here is not whether there was a duty, but whether the evidence forecast a *breach* of duty.

"Actionable negligence is the failure to exercise that degree of care which a reasonable and prudent person would exercise under similar conditions." *Hart v. Ivey*, 332 N.C. 299, 305, 420 S.E.2d 174, 177-78 (1992). Under this Court's decisions in *Hart* and *Camalier v. Jeffries*, 340 N.C. 699, 460 S.E.2d 133 (1995), "an individual may be held liable on a theory of common-law negligence if he (1) served alcohol to a person (2) when he knew or should have known the person was intoxicated and (3) when he knew the person would be driving afterwards." *Id.* at 711, 460 S.E.2d at 138. Here, as in *Camalier*, the forecast of evidence was insufficient to show that defendants knew or should have known that Blount was intoxicated at the time they sold alcohol to him. Thus, plaintiffs failed to forecast evidence of a breach of duty, and summary judgment for defendants was proper. Accordingly, I agree that the decision of the Court of Appeals should be affirmed.