KATHLYN MARIE STEIN AND MICHAEL HOOTSTEIN v. ASHEVILLE CITY BOARD OF EDUCATION, COOPERATIVE LEARNING CENTER (A/K/A WOLFE CREEK SCHOOL, NOW BUNCOMBE COMMUNITY SCHOOL WEST, AT THE TIME ADMINISTERED JOINTLY BY BLUE RIDGE HUMAN SERVICES FACILITIES, INC. AND/OR BLUE RIDGE MENTAL HEALTH AND/OR ASHEVILLE CITY BOARD OF EDUCATION AND/OR BUNCOMBE COUNTY BOARD OF EDUCATION), BUNCOMBE COUNTY BOARD OF EDUCATION, BLUE RIDGE CENTER FOR MENTAL HEALTH, AND BLUE RIDGE AREA AUTHORITY

No. 128A05

(Filed 3 March 2006)

**1. Negligence— per se—motion to dismiss—sufficiency of evidence**

The trial court did not err by dismissing under N.C.G.S. § 1A-1, Rule 12(b)(6) plaintiffs' claims of negligence per se resulting from the off-campus shooting of plaintiff wife by students who attended defendant's school for behaviorally and emotionally handicapped juveniles, because: (1) although violation of a public safety statute generally constitutes negligence per se, the school bus driver and bus monitor were not obligated under N.C.G.S. § 115C-245(d) to report conversations they overheard by the students about robbery and homicide not specific to any time, place, or intended victim when the plain language of N.C.G.S. § 115C-245(d) reveals the General Assembly enacted the statute to ensure the safety of the pupils and employees assigned to public school buses; and (2) pupils and employees assigned to buses would constitute the protected class of persons with stand-

STEIN v. ASHEVILLE CITY BD. OF EDUC.

[360 N.C. 321 (2006)]

ing to sue for injuries proximately resulting from violations of the statute, and nothing in plaintiffs' amended complaint suggests plaintiffs belong to the relevant protected class.

## 2. Negligence— common law—motion to dismiss—sufficiency of evidence

The trial court did not err by dismissing under N.C.G.S. § 1A-1, Rule 12(b)(6) plaintiffs' claim of common law negligence resulting from the off-campus shooting of plaintiff wife by students who attended defendant's school for behaviorally and emotionally handicapped juveniles, because: (1) for common law negligence purposes, no special relationship exists between a defendant and a third person unless the defendant knows or should know of the third person's violent propensities and defendant has the ability and opportunity to control the third person at the time of the third person's criminal acts; (2) while plaintiffs allege violent tendencies on the part of the students, the complaint offers no basis for believing defendant had the ability or the opportunity to control the students during the attack on plaintiff when the shooting occurred about 8:15 p.m. at an intersection well after normal school hours and not on property belonging to or under the supervision of defendant, and nowhere does plaintiffs' amended complaint suggest the students were then truant due to defendant's inadequate oversight; and (3) the complaint fails to allege the special relationship necessary to render defendant liable for the harm to plaintiffs by third persons.

Justice TIMMONS-GOODSON did not participate in the consideration or decision of this case.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 168 N.C. App. 243, 608 S.E.2d 80 (2005), on orders entered 8 August 2003, 13 August 2003, and 8 September 2003 by Judge Zoro J. Guice, Jr. and an order signed by Judge James E. Lanning on 11 June 2001, all in Superior Court, Buncombe County. The Court of Appeals affirmed the 13 August 2003 order, reversed the 8 September 2003 order, and dismissed plaintiffs' appeal from the 11 June 2001 and 8 August 2003 orders. Heard in the Supreme Court 12 September 2005.

*Orbock Ruark & Dillard, P.C., by Mark A. Leach, for plaintiff-appellees.*

*Patrick, Harper & Dixon L.L.P., by David W. Hood and Michael J. Barnett, for defendant-appellants Cooperative Learning Center, Blue Ridge Human Services Facilities, Inc., Blue Ridge Mental Health, Blue Ridge Center for Mental Health, and Blue Ridge Area Authority.*

NEWBY, Justice.

The issue is whether plaintiffs have stated a claim for negligence against defendant Blue Ridge Area Authority[1] ("defendant") for damages resulting from the off-campus shooting of plaintiff Stein by students who attended defendant's school. We hold plaintiffs have not stated a valid claim, and we reverse the Court of Appeals.

## I. BACKGROUND

Plaintiff Kathlyn Marie Stein ("Stein") and husband plaintiff Michael Hootstein filed suit against defendant alleging the following facts.[2] Defendant is a political subdivision of the State, organized under N.C.G.S. § 122C-101 through -200,[3] that has waived sovereign immunity through the purchase of liability insurance. At the time of Stein's shooting, defendant operated the Cooperative Learning Center ("CLC"), a special school for behaviorally and emotionally handicapped children. The CLC adhered to an unwritten policy of not reporting violent or criminal student activities unless those activities were likely to expose offending students to substantial incarceration. CLC employees were instructed "to look the other way" when students engaged in, or made plans to engage in, violent or criminal acts.

---

1. According to plaintiffs' amended complaint, the Blue Ridge Area Authority comprises the Blue Ridge Center for Mental Health, Cooperative Learning Center, Blue Ridge Human Services Facilities, Inc., Blue Ridge Mental Health, and the Authority itself.

2. Plaintiffs also named the Buncombe County Board of Education and the Asheville City Board of Education as defendants. The trial court eventually dismissed plaintiffs' claims against both boards. A unanimous Court of Appeals affirmed dismissal in favor of the Asheville City Board and concluded plaintiffs' appeal from dismissal in favor of the Buncombe County Board was untimely filed. *Stein*, 168 N.C. App. at 246-251, 608 S.E.2d at 83-86. These determinations are not before this Court.

3. These statutes authorize area authorities, such as defendant, which are charged with "planning, budgeting, implementing, and monitoring of . . . community-based mental health, developmental disabilities, and substance abuse services." N.C.G.S. § 122C-117 (2003).

In March 1998 J.B. (age thirteen) and C.N. (age fifteen) were behaviorally and emotionally handicapped CLC students. J.B. suffered from an "array of emotional problems" including violent outbursts, drug abuse, and fear of parental abuse. C.N. had threatened others openly and expressed homicidal thoughts. His mother and three uncles abused drugs, and C.N. had twice assaulted a CLC teacher.

Along with other CLC students, J.B. and C.N. traveled to and from the CLC on a public school bus driven by Nancy Patton and monitored by Gail Guzman, an unpaid volunteer. While on the bus the week before 17 March 1998, Guzman overheard two conversations between J.B. and C.N. ("the conversations"). During the first, C.N. told J.B. about a gun under his mattress at home. In the second, C.N. said, "Let's rob somebody," to which J.B. replied, "Okay." C.N. stated, "I have the gun." J.B. responded, "I'll kill them." Guzman repeated what she had heard to Patton, but neither adult informed school officials or law enforcement of the juveniles' comments.

On 17 March 1998, C.N. retrieved a gun from beneath his mattress. That same day, accompanied by eighteen-year-old Darryl Watkins and D.V. (age thirteen), J.B. and C.N. positioned themselves at an Asheville intersection. Between 7:00 p.m. and 8:15 p.m., the group approached three passing vehicles with the intent to rob and kill the drivers. At 8:15 p.m., using the gun C.N. had provided, J.B neared Stein's car and shot Stein in the head. The bullet entered just under her left ear, struck her second cervical vertebra, pierced an artery, and lodged in her right jaw. As a result of the shooting, Stein suffers from vascular problems, a spinal fracture, nerve damage, and post-traumatic stress disorder. All four assailants pled guilty to charges stemming from the attack.

The allegations of fact summarized above were contained in plaintiffs' initial and subsequent complaints. Plaintiffs voluntarily dismissed their initial complaint without prejudice. Thereafter plaintiffs filed a new complaint and an amended complaint. The amended complaint asserts causes of action for negligence *per se* and common law negligence;[4] as part of those claims, it alleges Patton worked for defendant and Guzman monitored the bus "within the course and scope of her duties" to defendant. The trial court dismissed plaintiffs' claims pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. Plaintiffs sought review in the Court of Appeals.

---

4. The amended complaint also asserts a cause of action for plaintiff Hootstein's loss of consortium.

**STEIN v. ASHEVILLE CITY BD. OF EDUC.**

[360 N.C. 321 (2006)]

A divided Court of Appeals reversed the trial court's order granting defendant's motion to dismiss. *Stein v. Asheville City Bd. of Educ.*, 168 N.C. App. 243, 608 S.E.2d 80 (2005). The majority determined plaintiffs stated a claim for negligence by sufficiently alleging: (1) defendant had a legal duty to protect others from J.B. and C.N.; (2) defendant breached its duty when Patton and Guzman did not report the conversations as required by N.C.G.S. § 115C-245; and (3) defendant's breach proximately caused the injuries to Stein. *Id.* at 252-56, 608 S.E.2d at 86-89. The dissent maintained plaintiffs failed to allege a duty of care because their allegations conclusively show defendant lacked "any ability or right to control [J.B. and C.N. at the time] plaintiffs were injured." *Id.* at 260, 608 S.E.2d at 91 (Tyson, J., concurring in part and dissenting in part). Noting the conversations were "not specific to any time, place, or intended victim," the dissent also argued the majority's holding would impermissibly render defendant "liable to any victim, at any time or place, whom [J.B. and C.N.] might eventually 'rob' or 'kill.' " *Id.* at 262, 608 S.E.2d at 92.

Defendant filed a notice of appeal to this Court. As this is an appeal of right based solely on the dissent in the Court of Appeals, our review is limited to the legal sufficiency of plaintiffs' allegations against defendant. N.C. R. App. P. 16(b).

## II. ANALYSIS

When reviewing a complaint dismissed under Rule 12(b)(6), we treat a plaintiff's factual allegations as true. *Wood v. Guilford Cty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002). Taken as true, plaintiffs' allegations cause concern. Our society remains in the shadow of the Columbine High School massacre and subsequent school shootings. The educators, staff members, and volunteers who accept the challenge of working with behaviorally and emotionally handicapped juveniles undoubtedly deserve praise; nonetheless, public school personnel who overhear students discussing robbery or homicide have a moral and civic obligation to respond appropriately. The power of the judiciary does not extend to purely moral or civic shortcomings, however. Absent legal grounds for visiting civil liability on defendant, our courts cannot offer plaintiffs the requested remedy.

In their amended complaint, plaintiffs assert statutory and common law imposed a legal duty on defendant to forestall the shooting of Stein. *See generally Estate of Mullis v. Monroe Oil Co.*, 349 N.C. 196, 204, 505 S.E.2d 131, 136 (1998) (defining a legal duty as " ' "an obligation, to which the law will give recognition and effect, to con-

form to a particular standard of conduct toward another" ' "). Plaintiffs submit defendant's breach of this duty exposed defendant to civil liability under two theories: (1) negligence *per se* for a violation of N.C.G.S. § 115C-245 (detailing the responsibilities of public school bus drivers and monitors), and (2) common law negligence. *See id.* at 200, 505 S.E.2d at 134. We consider the legal sufficiency of each cause of action in turn.

## A. NEGLIGENCE *PER SE*

**[1]** "[T]he general rule in North Carolina is that the violation of a [public safety statute] constitutes negligence *per se." Byers v. Standard Concrete Prods. Co.*, 268 N.C. 518, 521, 151 S.E.2d 38, 40 (1966). A public safety statute is one "impos[ing] upon [the defendant] a specific duty for the protection of others." *Lutz Indus., Inc. v. Dixie Home Stores*, 242 N.C. 332, 341, 88 S.E.2d 333, 339 (1955). Significantly, even when a defendant violates a public safety statute, the plaintiff is not entitled to damages unless the plaintiff belongs to "the class [of persons] intended to be protected by [the] statute," *Baldwin v. GTE S., Inc.*, 335 N.C. 544, 546, 439 S.E.2d 108, 109 (1994), and the statutory violation is "a proximate cause of [the plaintiff's] injury," *Hart v. Ivey*, 332 N.C. 299, 303, 420 S.E.2d 174, 177 (1992).

In the case *sub judice*, plaintiffs allege N.C.G.S. § 115C-245 obligated Patton and Guzman to report the conversations at issue to school officials. Plaintiffs contend that, had Patton or Guzman performed her statutory duty, the attack on Stein could have been thwarted. Plaintiffs further allege the acts and omissions of Patton and Guzman should be imputed to defendant. Although the Court of Appeals majority cited defendant's purported violation of N.C.G.S. § 115C-245 as an adequate allegation of breach when discussing plaintiffs' common law negligence claim, it did not directly address whether plaintiffs have successfully stated a claim for negligence *per se.*

Section 115C-245 of our General Statutes reads in pertinent part:

(b) The driver of a school bus . . . shall have complete authority over and responsibility for the operation of the bus and the maintaining of good order and conduct upon such bus, *and shall report promptly to the principal any misconduct upon such bus* or disregard or violation of the driver's instructions by any person riding upon such bus. The principal may take such action with reference to any such misconduct upon a school bus,

or any violation of the instructions of the driver, as he might take if such misconduct or violation had occurred upon the grounds of the school.

. . . .

(d) The superintendent or superintendent's designee may, in his discretion, appoint a monitor for any bus assigned to any school. *It shall be the duty of such monitor, subject to the direction of the driver of the bus, to preserve order upon the bus and do such other things as may be appropriate for the safety of the pupils and employees assigned to such bus* while boarding such bus, alighting therefrom or being transported thereon, and to require such pupils and employees to conform to the rules and regulations established by the local board of education for the safety of pupils and employees upon school buses. Such monitors shall be unpaid volunteers who shall serve at the pleasure of the superintendent or superintendent's designee.

N.C.G.S. § 115C-245 (2003) (emphasis added). Assuming *arguendo* the conversations were "misconduct" within the meaning of N.C.G.S. 115C-245(b), the question becomes whether the alleged failure of Patton and Guzman to report them was negligence *per se*.

One could plausibly argue the General Assembly intended N.C.G.S. § 115C-245 to be a public safety statute. Disorderly students can distract a bus driver, thereby imperiling the driver, other motorists, pedestrians, and themselves. By investing bus drivers with authority over, and responsibility for, good order and conduct on public school buses, subsection (b) seems designed to avoid hazards of this sort. Subsection (d) offers additional evidence that N.C.G.S. § 115C-245 is a public safety statute. This subsection fixes a "duty" on public school bus monitors "to preserve order upon the bus and do such other things as may be appropriate" to safeguard students and school system employees from injury while on the bus. *Id.* § 115C-245(d). These features are consistent with those of public safety statutes.

Regardless of whether N.C.G.S. § 115C-245 qualifies as a public safety statute, plaintiffs' claim for negligence *per se* is fatally defective. The plain language of N.C.G.S. § 115C-245(d) reveals the General Assembly enacted the statute to ensure "the safety of the pupils and employees assigned to [public] school bus[es]." Consequently, pupils and employees assigned to buses would constitute the protected

class of persons with standing to sue for injuries proximately result-
ing from violations of the statute. Nothing in plaintiffs' amended com-
plaint suggests plaintiffs belong to the relevant protected class.
Precedents of this Court therefore compel us to conclude plaintiffs
have not stated a negligence *per se* claim. *E.g., Hart,* 332 N.C. at 303,
420 S.E.2d at 177.

## B. COMMON LAW NEGLIGENCE

[2] We next evaluate whether plaintiffs sufficiently allege common
law negligence. To state a claim for common law negligence, a plain-
tiff must allege: (1) a legal duty; (2) a breach thereof; and (3) injury
proximately caused by the breach. *See Kientz v. Carlton,* 245 N.C.
236, 240, 96 S.E.2d 14, 17 (1957). Thus, the threshold question is
whether plaintiffs successfully allege defendant had a legal duty to
avert the attack on Stein. *Palsgraf v. Long Island R.R. Co.,* 248 N.Y.
339, 342-44, 162 N.E. 99, 99-100 (1928). "In the absence of a legal duty
owed to the plaintiff by [the defendant], [the defendant] cannot be
liable for negligence." *Cassell v. Collins,* 344 N.C. 160, 163, 472 S.E.2d
770, 772 (1996), *overruled on other grounds by Nelson v. Freeland,*
349 N.C. 615, 507 S.E.2d 882 (1998). No legal duty exists unless the
injury to the plaintiff was foreseeable and avoidable through due
care. *Mullis,* 349 N.C. at 205, 505 S.E.2d at 137 (holding no duty when
plaintiff failed to present evidence showing "defendant commercial
vendors should have recognized that [plaintiff], or anyone similarly
situated[,] might be injured by their conduct"). Whether a plaintiff's
injuries were foreseeable depends on the facts of the particular case.[5]
*Id.* at 206, 505 S.E.2d at 138.

Unlike many cases involving common law negligence claims,
here plaintiffs desire damages from defendant for the actions of third
persons. There is no allegation defendant or its personnel encour-
aged, planned, or executed the shooting; rather, plaintiffs rest their
claim on the failure of Patton and Guzman, and by imputation defend-
ant, to take reasonable steps to frustrate the plans of J.B. and C.N.

We have often remarked the law's reluctance to burden individ-
uals or organizations with a duty to prevent the criminal acts of oth-
ers. *Cassell,* 344 N.C. at 165, 472 S.E.2d at 773 ("[O]ur general rule of
law . . . declines to impose civil liability upon landowners for crimi-

---

5. Foreseeability is also an element of proximate cause. *See Williamson v.
Liptzin,* 141 N.C. App. 1, 10, 539 S.E.2d 313, 319 (2000) ("The element of foreseeability
is a requisite of proximate cause."). Given that we hold no duty existed, we do not
reach the question of proximate cause.

nal acts committed by third persons."); *Moore v. Crumpton*, 306 N.C. 618, 622, 295 S.E.2d 436, 439 (1982) ("[I]t is a well-established doctrine that the mere fact of parenthood does not make individuals liable for the wrongful acts of their unemancipated minor children."); *Foster v. Winston-Salem Joint Venture*, 303 N.C. 636, 638, 281 S.E.2d 36, 38 (1981) (Store owners are ordinarily "not liable for injuries to [their] invitees which result from the intentional, criminal acts of third persons."). Our cases typically regard such acts as unforeseeable and "independent, intervening cause[s] absolving the [defendant] of liability." *Foster*, 303 N.C. at 638, 281 S.E.2d at 38.

Notwithstanding the general rule, we have held a defendant may be liable for the criminal acts of another when the defendant's relationship with the plaintiff or the third person justifies making the defendant answerable civilly for the harm to the plaintiff. For example, we determined a common carrier must exercise reasonable care to protect its passengers from foreseeable assaults. *Smith v. Camel City Cab Co.*, 227 N.C. 572, 574, 42 S.E.2d 657, 658-59 (1947); *see Foster*, 303 N.C. at 640, 281 S.E.2d at 39 (holding plaintiff stated a claim when she alleged she was on defendant store owner's premises during business hours to transact business and there sustained injuries from reasonably foreseeable and preventable criminal acts of a third person). Similarly, we decided a parent who knows or should know of his unemancipated minor child's dangerous propensities may have a legal duty to "exercise reasonable control over the child so as to prevent injury to others." *Moore*, 306 N.C. at 622, 295 S.E.2d at 439-40.

In the instant case, plaintiffs assert liability founded on defendant's relationship with the third persons who injured them. Hence, the legal sufficiency of plaintiffs' claim hinges on whether defendant's relationship with J.B. and C.N. amounted to a "special relationship" requiring defendant to use due care to avert the attack on Stein. The amended complaint alleges defendant knew J.B. and C.N. were emotionally and behaviorally handicapped children and "had custody of [J.B. and C.N.] . . . and/or had the ability or right to control [the juveniles] at the pertinent time."

As previously mentioned, the dissent in the Court of Appeals argued that plaintiffs' amended complaint falls short of alleging negligence inasmuch as its allegations show defendant lacked custody or control of J.B. and C.N. at the time of the shooting. *Stein*, 168 N.C. App. at 260, 608 S.E.2d at 90-91 (Tyson, J., concurring in part and dissenting in part) (" '[T]he pertinent time' in a negligence action

[is] when plaintiffs suffered injury: the time of the shooting."). Conceding defendant possessed no authority over the juveniles when Stein was attacked, the Court of Appeals majority did not deem the point dispositive:

> Defendant[] contend[s] . . . no duty existed because plaintiffs cannot establish that defendant[] had custody or the ability to control the students after school hours, when the shooting occurred. This argument relates to the question of proximate cause rather than duty. Plaintiffs' complaint does not argue that defendant[] breached [its] duty by failing to control the students at the time that they were shooting plaintiff Kathlyn Stein, but rather that the breach occurred while the students were on the bus, at a time when . . . defendant[] did have custody and control over the students. In other words, the negligence occurred not at 7:00 p.m., but rather while the students were on school property and . . . defendant[] had custody and the legal right to control them.

*Id.* at 254-55, 608 S.E.2d at 88.

The Court of Appeals majority applied an incorrect rule of law. We have never held the ability of an otherwise legally blameless defendant to control a third person at the time of the third person's criminal acts is unrelated to the question of legal duty, and we decline to do so now.[6] For common law negligence purposes, no special relationship exists between a defendant and a third person unless (1) the defendant knows or should know of the third person's violent propensities and (2) the defendant has the ability and opportunity to control the third person at the time of the third person's criminal acts. Only after a plaintiff has sufficiently alleged and proved a special

---

6. Nor, apparently, has the Court of Appeals heretofore so held. In *King v. Durham Cty. Mental Health Developmental Disabilities and Substance Abuse Auth.*, 113 N.C. App. 341, 439 S.E.2d 771, *disc. rev. denied*, 336 N.C. 316, 445 S.E.2d 396 (1994), for example, seventeen-year-old Mohammed Thompson fatally shot Sherri King after escaping from the defendants' facility for youths with violent tendencies. *Id.* at 342-43, 439 S.E.2d at 772-73. The Court of Appeals held the defendants were not liable for Thompson's actions because Thompson voluntarily resided at the facility and "[i]t [could] therefore [not] be said that any of the defendants had custody of Thompson or . . . the ability or [legal] right to control him." *Id.* at 347, 439 S.E.2d at 775.

In *Pangburn v. Saad*, 73 N.C. App. 336, 326 S.E.2d 365 (1985), the Court of Appeals held the plaintiff sufficiently stated a claim against the defendant psychiatrist for the wrongful discharge of a patient who stabbed her following his release. *Id.* at 337, 326 S.E.2d at 366. Unlike Thompson's situation in *King*, the patient in *Pangburn* was *involuntarily* committed to the defendant's care. *Id.* at 347, 326 S.E.2d at 372. Thus, the defendant could have controlled the patient at the time of the stabbing but for the wrongful release.

relationship between the defendant and the third person will the finder of fact reach the issue of breach, that is, "whether the [defendant] exercised reasonable care under all of the circumstances." *Moore*, 306 N.C. at 624, 295 S.E.2d at 440.

Our holding accords with this Court's decision in *Moore v. Crumpton*. In *Moore*, the plaintiff brought a personal injury action against the defendant parents for her rape at the hands of their son, John, Jr. *Id.* at 619, 295 S.E.2d at 438. The plaintiff alleged the parents knew or should have known that their son's drug abuse and "dangerous mental state and disposition" made it foreseeable he would intentionally injure others. *Id.* at 619-20, 295 S.E.2d at 438. She alleged her rape was the proximate result of the parents' negligent failure to control John, Jr. *Id.* at 620, 295 S.E.2d at 438. The trial court granted the parents' motions for summary judgment, and the Court of Appeals affirmed. *Id.* at 622, 295 S.E.2d at 439.

On appeal, this Court held a parent may be liable for not exercising reasonable control over a child if the parent (1) had the ability and opportunity to control his child and (2) knew or should have known of the necessity for exercising such control. *Id.* at 623, 295 S.E.2d at 440. Turning to the facts of *Moore*, the Court upheld summary judgment for both parents, first reasoning that neither parent knew or should have known of the necessity for controlling John, Jr. *Id.* at 626-28, 295 S.E.2d at 441-43. Despite being aware of John, Jr.'s persistent drug problems, his impregnation of a young girl, and his assault on another person, the parents "had no recent information to indicate that another assault might occur or that John, Jr. might become involved in a forcible rape." *Id.* at 627, 295 S.E.2d at 442.

This Court further concluded neither parent had the ability to control seventeen-year-old John, Jr. at the time of the rape. It noted the parents' marital separation shortly before the incident had left John, Jr. "under the exclusive care and control of his father." *Id.* at 626, 295 S.E.2d at 441. On the night of the rape, the mother "was at the beach, far away . . . and had had no regular contact with or responsibility for" John, Jr. since the separation. *Id.* As for the father, having "total responsibility for John, Jr. and one other child [made it] almost impossible for him to watch [John, Jr.] twenty-four hours a day." *Moore*, 306 N.C. at 628, 295 S.E.2d at 443. John, Jr. "apparently left home [to rape the plaintiff] after midnight . . . when parents ordinarily would not be expected to be engaged in maintaining surveillance of their children." *Id.* at 626, 295 S.E.2d at 442. Short of "physically restraining [John, Jr.] and placing him under twenty-

four hour . . . observation," the father could not have prevented the harm to the plaintiff. *Id.* at 627, 295 S.E.2d at 442; *see also O'Connor v. Corbett Lumber Corp.*, 84 N.C. App. 178, 352 S.E.2d 267 (1987) (affirming summary judgment for the employer of a work release inmate who was not on the job when he broke into plaintiff's house and raped plaintiff).

Here defendant's position appears analogous to that of the mother in *Moore*. Though the conversations arguably alerted defendant to the criminal designs of J.B. and C.N., *but see Stein*, 168 N.C. App. at 262, 608 S.E.2d at 92 (Tyson, J., concurring in part and dissenting in part) (characterizing the conversations as "not specific to any time, place, or intended victim"), plaintiffs' allegations establish J.B. and C.N. were entirely outside of defendant's custody and control at the time of the shooting. Whatever authority Patton and Guzman could have otherwise wielded over J.B. and C.N. terminated once the juveniles exited the bus. The shooting occurred about 8:15 p.m. at an Asheville intersection, well after normal school hours and not on property belonging to, or under the supervision of, defendant. Nowhere does plaintiffs' amended complaint suggest J.B. and C.N. were then truant due to defendant's inadequate oversight. In sum, while plaintiffs allege violent tendencies on the part of J.B. and C.N., their complaint offers no basis for believing defendant had the ability or the opportunity to control J.B. and C.N. during the attack on Stein. The complaint therefore fails to allege the special relationship necessary to render defendant liable for the harm to plaintiffs by third persons.

## III. DISPOSITION

Based on the factual allegations in plaintiffs' complaint, N.C.G.S. § 115C-245 did not require defendant to safeguard plaintiffs. Moreover, defendant had no common law duty to prevent the attack on Stein. Consistent with our case law, we regard the shooting as the regrettable, but ultimately unforeseeable, criminal act of third persons. *E.g., Foster*, 303 N.C. at 638, 281 S.E.2d at 38. The trial court properly dismissed plaintiffs' claims for negligence *per se* and common law negligence. Accordingly, the decision of the Court of Appeals is reversed.

REVERSED.

Justice TIMMONS-GOODSON did not participate in the consideration or decision of this case.