IN THE SUPREME COURT OF NORTH CAROLINA

No. 409A12

FILED 13 JUNE 2013

CATRYN DENISE BRIDGES

v.

HARVEY S. PARRISH and BARBARA B. PARRISH

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, ___ N.C. App. ___, 731 S.E.2d 262 (2012), affirming an order dismissing plaintiff's complaint entered on 3 November 2011 by Judge Thomas D. Haigwood in Superior Court, Johnston County. Heard in the Supreme Court on 6 May 2013.

*Wake Forest University School of Law Appellate Advocacy Clinic, by John J. Korzen, for plaintiff-appellant.*

*Poyner Spruill LLP, by Steven B. Epstein, for defendant-appellees.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Christopher R. Kiger, for North Carolina Association of Defense Attorneys, amicus curiae.*

MARTIN, Justice.

Plaintiff, Catryn Bridges, seeks money damages from defendants, Harvey and Barbara Parrish, for the criminal acts of their 52-year-old son Bernie. Plaintiff alleges that Harvey and Barbara negligently stored their firearm, which Bernie wrongfully took from their home and used to shoot plaintiff. We hold these parents are not liable for the criminal conduct of their 52-year-old son.

Plaintiff made the following allegations in her complaint: Plaintiff dated Harvey and Barbara's son, Bernie, for seven months in 2010. At that time she was unaware that Bernie had a history of escalating violence towards the women with whom he had romantic relationships and he had been charged with, among other things, first-degree kidnapping, assault with a deadly weapon with intent to kill or inflict serious injury, and possession of a firearm by a felon in 2007. During the events at issue here, Bernie lived in a building on Harvey and Barbara's property, while they attempted to provide their son with guidance, advice, and financial assistance. Harvey and Barbara owned a number of firearms, to which Bernie occasionally had access. During Bernie's relationship with plaintiff, Harvey and Barbara met her on many occasions.

According to the complaint, plaintiff ended her relationship with Bernie in November 2010 because he exhibited "controlling, accusatory and risky" behavior. They resumed their relationship in January 2011. The dysfunctional relationship dynamics again escalated. In a conversation on 7 March 2011, Bernie accused plaintiff of seeing other men. The next day Bernie drove to plaintiff's workplace and shot her in the abdomen with one of Harvey and Barbara's guns.

Following the assault, rather than suing Bernie, plaintiff filed a civil complaint alleging that Harvey and Barbara "knew or should have known that Bernie Parrish posed a risk of serious harm to Plaintiff" yet "failed to take reasonable and/or necessary steps to keep [their] guns in a safe and secure place, or

otherwise adequately locked and located such that Bernie Parrish could not get access to and possession of any such guns." Harvey and Barbara filed a motion to dismiss, which the trial court allowed. Plaintiff appealed to the Court of Appeals.

On appeal plaintiff proposed three theories of liability against Harvey and Barbara, only one of which is before us: a negligence claim alleging Harvey and Barbara breached a common law duty to secure their firearms from their son. *Bridges v. Parrish*, ___ N.C. App. ___, ___, 731 S.E.2d 262, 264-65 (2012). The Court of Appeals majority declined to find that such a duty arose under North Carolina common law. *Id.* at ___, 731 S.E.2d at 266-67. The dissenting judge would have reversed the trial court's decision and allowed plaintiff to proceed with a claim for negligent storage of a firearm. *Id.* at ___, 731 S.E.2d at 268-69 (Geer, J., concurring in part and dissenting in part). We affirm.

Our review of the grant of a motion to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure is de novo. We consider "whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory." *Coley v. State*, 360 N.C. 493, 494-95, 631 S.E.2d 121, 123 (2006) (citation and internal quotation marks omitted).

Plaintiff has asserted a common law negligence claim. To state a common law negligence claim, plaintiff must show "(1) a legal duty; (2) a breach thereof; and (3) injury proximately caused by the breach." *Stein v. Asheville Bd. of Educ.*, 360 N.C. 321, 328, 626 S.E.2d 263, 267 (2006) (citation omitted). In the case before us,

the only element contested is whether Harvey and Barbara owed plaintiff a legal duty.

We have stated that "[n]o legal duty exists unless the injury to the plaintiff was foreseeable and avoidable through due care." *Id.* at 328, 626 S.E.2d at 267 (citing *Estate of Mullis v. Monroe Oil Co.*, 349 N.C. 196, 205, 505 S.E.2d 131, 137 (1998)). The criminal acts of a third party are generally considered "unforeseeable and independent, intervening cause[s] absolving the [defendant] of liability." *Id.* at 329, 626 S.E.2d at 268 (alterations in original) (quoting *Foster v. Winston-Salem Joint Venture*, 303 N.C. 636, 638, 281 S.E.2d 36, 38 (1981)) (internal quotation marks omitted). For this reason, the law does not generally impose a duty to prevent the criminal acts of a third party. *Id.* at 328, 626 S.E.2d at 268.

As an exception to this rule, our common law may allow a defendant to be held liable for the criminal acts of a third party in cases of "special relationships"—"when the defendant's relationship with the plaintiff or the third person justifies making the defendant answerable civilly for the harm to the plaintiff." *Id.* at 329, 626 S.E.2d at 268. Plaintiff has waived her argument that Harvey and Barbara had a special relationship with *Bernie. Bridges*, ___ N.C. App. at ___ n.1, 731 S.E.2d at 265 n.1 (majority opinion). Accordingly, to state a claim for negligence based on a special relationship, plaintiff's complaint must allege facts sufficient to show that her relationship with *Harvey and Barbara* justified requiring them to use due care to prevent the attack on her.

Special relationships create a responsibility to take "affirmative action for the aid or protection of another," 2 Restatement (Second) of Torts § 314 A cmt. b (1965), and they arise only in narrow circumstances. For example, "the parent of an unemancipated child may be held liable in damages for failing to exercise reasonable control over the child's behavior if the parent had the ability and the opportunity to control the child and knew or should have known of the necessity for exercising such control." *Moore v. Crumpton*, 306 N.C. 618, 623, 295 S.E.2d 436, 440 (1982) (citations omitted). In addition, a landowner has a "duty to safeguard his business invitees from the criminal acts of third persons" if those criminal acts are foreseeable. *Foster*, 303 N.C. at 640, 281 S.E.2d at 39 (citation omitted). Further, common carriers owe a duty "to provide for the safe conveyance of their passengers as far as human care and foresight can go." *Smith v. Camel City Cab Co.*, 227 N.C. 572, 574, 42 S.E.2d 657, 658 (1947) (citations and internal quotation marks omitted). Other special relationships include those between innkeepers and their guests and people who voluntarily accept custody of another. *See* 2 Restatement (Second) of Torts § 314 A. In these cases special relationships creating liability have arisen through circumstances such as voluntary assumption of another's care and well-being or the ability to control the third person at the time of the criminal acts.

Here, plaintiff's complaint is devoid of any allegations that, if taken as true, demonstrate that Harvey and Barbara had a special relationship with her that gave

rise to a legal duty. Like the defendants in *Moore*, Harvey and Barbara did not prevent their child from accessing a deadly weapon that the child used to harm another person. *Moore*, 306 N.C. at 620, 295 S.E.2d at 438. While parents may be held liable for the actions of their children in some circumstances, we noted in *Moore* that "[t]he opportunity to control a young man of [17 years] obviously is not as great as with a younger child. . . . Short of standing guard over the child twenty-four hours a day, there was little that the defendant father could do to prevent" the harm to the plaintiff. *Id*. at 626, 295 S.E.2d at 442. We did not hold the parents in *Moore* responsible for the criminal actions of their 17-year-old son. *Id*. at 626, 628, 295 S.E.2d at 441-42, 443. Even more so, Harvey and Barbara are not liable for the criminal actions of their 52-year-old son.

Because plaintiff has not stated a claim that supports a finding of negligence based on a special relationship, the only remaining theory of liability is that Harvey and Barbara negligently breached a duty owed to plaintiff as a member of the general public. Relying on previous cases that have characterized firearms as dangerous instrumentalities, plaintiff argues that Harvey and Barbara had a duty to secure their firearms. We disagree. While our prior cases articulate a duty to exercise due care in the use of dangerous instrumentalities, they do not mandate a home storage requirement. *Cf. Edwards v. Johnson*, 269 N.C. 30, 35, 152 S.E.2d 122, 126 (1967) ("It is settled law with us that the highest degree of care is exacted of those *handling* firearms." (emphasis added)); *Belk v. Boyce*, 263 N.C. 24, 31, 138

S.E.2d 789, 794 (1964) ("[A] very high degree of care is required from all persons *using* firearms in the immediate vicinity of others regardless of how lawful or innocent such use may be." (emphasis added)). The mere possession of a legal yet dangerous instrumentality does not create automatic liability when a third party takes that instrumentality and uses it in an illegal act. As long as the dangerous instrumentalities are kept in accordance with statutory regulations, the law does not impose civil liability under the present allegations.

The General Assembly has enacted a myriad of statutes relating to the use and storage of firearms. *See, e.g.*, N.C.G.S. §§ 14-269.2 (prohibiting firearms on educational property or at school-sponsored activities), -269.7 (prohibiting persons under the age of eighteen from possessing handguns), -315.1 (making it a crime to not secure firearms in premises shared with a minor), -415.11 (2011) (regulating concealed carry permits). The General Assembly, however, has not elected to impose civil liability in the circumstances presented in the case before us. Moreover, as defendants observe, "not a single appellate court has recognized a cause of action for negligent storage of a firearm broad enough to encompass the claim Plaintiff pleads here."

As amicus curiae aptly explains, "under Plaintiff's theory, a negligent-based cause of action would exist against a homeowner virtually any time a gun (or any other object that could be used to injure someone) was stolen from the homeowner's premise[s] and then used in the commission of a violent crime that injures another

person." It logically follows that holding gun owners responsible for the criminal use of their guns by unauthorized adult users would unfairly burden those who lawfully own and store guns in their homes. *Cf. Nelson v. Freeland*, 349 N.C. 615, 632, 507 S.E.2d 882, 892 (1998).

Even when all plaintiff's allegations are taken as true, Harvey and Barbara cannot be held liable for their 52-year-old son's criminal actions, which are "unforeseeable and independent, intervening cause[s] absolving [defendants] of liability." *Stein*, 360 N.C. at 329, 626 S.E.2d at 268 (first alteration in original) (citation and internal quotation marks omitted). Our General Assembly is a "far more appropriate forum than the courts for implementing policy-based changes to our laws," *Rhyne v. K-Mart Corp.*, 358 N.C. 160, 169, 594 S.E.2d 1, 8 (2004), so long as such policy-based changes are kept within constitutional bounds, *see Britt v. State*, 363 N.C. 546, 550, 681 S.E.2d 320, 323 (2009). Accordingly, we affirm the decision of the Court of Appeals.

AFFIRMED.

Justice BEASLEY took no part in the consideration or decision of this case.